W. T. BARNES and Alvin A. Goering, Petitioners,

v.

The Honorable Charles M. WILSON, Judge of the District Court, Beckham County, Oklahoma, Respondent.

No. 52274.

Supreme Court of Oklahoma.

June 27, 1978.

Sargent & Klenda, James W. Sargent, Marc A. Salle, Wichita, Kan., Prichard, Norman, Reed & Wolgemuth, Joel L. Wolgemuth, Tulsa, for petitioners.

Blevins, Willsie & Lakey, Michael W. Blevins, J. Robert W. Lakey, Sayre, for respondent.

BARNES, Justice:

Petitioners, W. T. Barnes and Alvin A. Goering, filed this original proceeding, asking this Court to enter an order assuming original jurisdiction and issuing a Writ of Prohibition to Respondent, the Honorable Charles M. Wilson, Judge of the District Court of Beckham County, Oklahoma, enjoining him from proceeding against the Petitioners in a case styled "First American Bank of Erick, Oklahoma, v. Roland J. Simpson, W. T. Barnes and Alvin A. Goering, No. C–77–139", and vacating the Trial Judge's order of April 21, 1978. That order overruled the Petitioners' Special Appearance, Motion to Quash, and Demurrer.

The action in the court below was instituted by First American Bank, Erick, Oklahoma (Bank), in December, 1977, for judgment against Petitioners and Roland J. Simpson, and for foreclosure of a security agreement and attorneys' fees. Petitioners were served with summons and a copy of the Petition. They then filed a Special Appearance, Motion to Quash, and Demurrer, objecting to the *in personam* jurisdiction of the Beckham County District Court over them, which was overruled.

The single issue presented is whether the courts of the State of Oklahoma can constitutionally exercise *in personam* jurisdiction over the nonresident Petitioners, Barnes and Goering.

The pertinent facts are that Simpson, Barnes and Goering are shareholders and officers of a Kansas corporation, Independent Truckers Service, Inc. In order to purchase two trailers for use by the corporation, Simpson, a resident of Oklahoma, executed a promissory note with Plaintiff Bank in the amount of $14,400.00. Upon the Bank's request, Simpson told the Bank he would have Barnes and Goering, residents of Wichita, Kansas, sign the note with him to assure payment.

The promissory note was a standard form document containing printing on but one side thereof, made by Simpson to the order of the Bank. Simpson sent the note to Kansas and acquired the signatures of Barnes and Goering, which were subscribed

on the back of the note and returned to Oklahoma. The only words contained on the reverse side of the note are the signatures themselves. Neither Barnes nor Goering signed the note in their corporate capacity as officers, nor are there words of guarantee or to indicate endorsement. Furthermore, both Barnes and Goering contend that neither was informed that his signature was obtained for the purpose of endorsement or guarantee of the note; that they signed the note in response to Simpson's request that they inform the Bank as to the names of the officers and shareholders of Independent Truckers Service, Inc.

Simpson defaulted and the Bank then filed the action below against Simpson, Barnes and Goering, alleging the latter two are endorsers and therefore liable for the face amount of the note.

Neither Barnes nor Goering has transacted any business or engaged in any relationship with any resident of Oklahoma in any transaction or event giving rise to this lawsuit. Both are residents of Wichita, Kansas, and have no offices, employees, agents, or other representatives in the State. Their sole contact with Oklahoma is that they signed their names in Kansas on the reverse side of a promissory note of which an Oklahoma bank was payee.

■ The authority of this Court to issue Writs of Prohibition against the District Courts is derived from Okla.Const. Art. 7, § 4. This Court has previously exercised its original jurisdiction to issue such writs against District Judges who exercise *in personam* jurisdiction over nonresident defendants who had insufficient minimum contacts with Oklahoma to satisfy demands of due process, or whose activities were without the Oklahoma Longarm Statute, 12 O.S. Supp.1972, § 187. See *Precision Polymers, Inc. v. Nelson,* 512 P.2d 811 (Okl.1973); *Architectural Building Components Corp. v. Comfort,* 528 P.2d 307 (Okl.1974). For reasons hereinafter related, we believe prohibition is a proper remedy for relief under the facts and circumstances of this case.

The Petitioners argue that their signatures were neither an endorsement nor a guarantee of the note. That may well be true, but what this Court is called upon to decide is whether that determination is to be made in Kansas or Oklahoma.

Petitioners argue that authority for the proposition that they are not endorsers is contained in 12A O.S.1971, § 3–101 et seq., which makes it clear that endorsement is a function of negotiability and that the only party who has the power to endorse a negotiable instrument is the holder thereof; that only the Bank is the holder, since the note is made to the order of the Bank. Therefore, only the Bank, as holder, could endorse the note for negotiation. They argue that neither Barnes nor Goering had the power to transfer the Simpson note for payment.

Petitioners next contend they are not guarantors, as signatures on the reverse side of the note are unaccompanied by any writing containing any promise to answer for Simpson's debt; that a contract of guarantee must be in writing as required by 15 O.S.1971, § 136; and, further, a promise to answer for the debt of another must be in writing to be enforceable under the Statute of Frauds. *Hiner v. Washita Valley Bank,* 152 P. 112 (Okl.1915).

Even assuming that Petitioners occupy a status vis-a-vis the Bank, which is tantamount to endorsement or guarantee, such status, they argue, in and of itself, does not subject them to the *in personam* jurisdiction of Respondent's court.

■ We deem it unnecessary to trace the evolution of longarm personal jurisdiction by a court over a nonresident defendant, a doctrine thoroughly established by the United States Supreme Court. See *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). These cases only establish general guidelines concerning the applicability of the "minimum contacts" test and what does or does not offend the traditional notions of fair play and substan-

tial justice. There is no formula automatically determinative of every case.

We note from our review that there is a divergence of authority on the amenability of a nonresident *guarantor* to the *in personam* jurisdiction of the forum court. The Bank and the Respondent Judge relied on two cases in which it was decided that a nonresident guarantor of a debt would properly be within the *in personam* jurisdiction of the forum court. *Hamada v. The Valley National Bank*, 555 P.2d 1121 (Ariz. App.1976), and *Gubitosi v. Buddy Schoellkoph Products, Inc.*, 545 S.W.2d 528 (Texas 1976). Those cases do not represent the weight of authority and are distinguishable in that in those cases there were written words of guarantee, as well as additional factors, which provided added reason for those courts to hold the parties amenable to *in personam* jurisdiction.

In *Hamada, supra*, a letter was written by a nonresident of Arizona, whereby he guaranteed payment of a note given to an Arizona bank. That letter contained such language as "I hereby agree, upon demand by the Valley Bank, to purchase up to 250,-000 shares of Pilot Titanium stock from Ted Peterson with proceeds payable to Valley National Bank at 20¢ per share with the total dollar amount not to exceed $50,000." Mr. Hamada typed the letter drafted by the bank on his own letterhead and mailed it to Peterson, who forwarded it to the bank in Arizona.

In *Gubitosi, supra*, guaranty agreements were signed by a nonresident corporation in New York, executed to a Texas corporation. Unlike the case at bar, the guaranty agreements stated that "I, Vincent Gubitosi, do guarantee, as an individual, payment for the trade note. . . ."

Even if *Hamada* and *Gubitosi, supra*, were not distinguishable from the case at bar, we note there are numerous cases contra. In *D. E. B. Adjustment Company v. Dillard*, 508 P.2d 420 (Colo.App.1973), a college student executed a promissory note for room and board in Colorado, then sent it to his mother in California, who signed it as guarantor. The student defaulted and the college attempted to assert longarm jurisdiction against the mother, a California resident. The Court said that the mother's execution in California of the contract, as guarantor, does not provide that quantum of minimum contact with Colorado such that the maintenance of the suit would not offend traditional notions of due process.

Respondent also contends that the fact that the Bank may have been induced by Petitioners' signatures to loan money to Simpson is pertinent to the issue of *in personam* jurisdiction over Barnes and Goering. The case of *Sibley v. The Superior Court of Los Angeles County*, 128 Cal.Rptr. 34, 546 P.2d 322 (Cal.1976), held to the contrary. That case involved a plaintiff who attempted to base *in personam* jurisdiction upon a California longarm statute which allowed service on nonresidents whose actions outside the State caused some "effect" in California. The effect Plaintiff alleged to have been caused by the execution of a guaranty was inducement to enter into a business relationship with a third party. The California court held that this was not sufficient to warrant in personam jurisdiction, stating:

"The mere causing of an 'effect' in California, however, as acknowledged in the Judicial Council comment quoted above, is not necessarily sufficient to afford a constitutional basis for jurisdiction; notwithstanding this 'effect,' the imposition of jurisdiction may be 'unreasonable.'

\*      \*      \*      \*      \*      \*

"In the present case, the record fails to disclose that petitioner purposefully availed himself of the privilege of conducting business in California or of the benefits and protections of California laws. Likewise, the record does not indicate that petitioner anticipated that he would derive any economic benefit as a result of his guaranty. Although petitioner may have reasonably foreseen that his execution or breach of the guaranty agreement would have some impact in this state, it does not appear that plaintiff Carlsberg assumed any obligations to

petitioner which he might have sought to enforce in California. * * * "

Petitioners also rely on the Tenth Circuit case of *Misco Leasing, Inc. v. Vaughn*, 450 F.2d 257 (10th Cir. 1971), which we find persuasive. That case presented the question of whether Kansas process under its longarm statute is valid against an Oklahoma resident who executed a guaranty of payment contract in Oklahoma in connection with payments which were to have been made by an Oklahoma lessee of equipment leased by a Kansas lessor. The Tenth Circuit Court said:

"Since Keller had no physical contact with Kansas, and since there was no contact through an agent, jurisdiction is wholly dependent on his execution of the guaranty contract in Oklahoma. This is insufficient basis for holding that he transacted business so as to be subject to the operation of the long arm statute."

This Court has consistently held that the Oklahoma longarm statute extends the jurisdiction of Oklahoma courts over nonresidents to the outer limits permitted by the United States Constitution due process requirements. *Fidelity Bank, N. A. v. Standard Industries, Inc.*, 515 P.2d 219 (Okl. 1973); *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48 (Okl.1976). We do not purport to prejudge the merits of the present case and will not speculate or express any opinion as to whether or not the Plaintiff Bank alleged a cause of action or will be able to establish at a trial the cause of action it purports to have alleged against Petitioners herein. However, upon the record before us, we find that Plaintiff Bank failed to demonstrate that Petitioners had sufficient contacts with the State of Oklahoma so that traditional notions of fair play and substantial justice would not be offended if this State exercised *in personam* jurisdiction.

In accord with the foregoing, we assume original jurisdiction and grant Petitioners' request for a Writ of Prohibition enjoining Respondent Judge from proceeding against Petitioners in the cause below.

ORIGINAL JURISDICTION ASSUMED; WRIT OF PROHIBITION GRANTED.

WILLIAMS, BERRY, SIMMS and DOOLIN, JJ., concur.

LAVENDER, V. C. J., and DAVISON and IRWIN, JJ., dissent.