2004 OK 83

CONOCO INC., a Delaware corporation, Appellant,

v.

AGRICO CHEMICAL COMPANY, a Delaware corporation; Freeport–McMoran Resource Partners, Limited Partnership, a Delaware limited partnership; Freeport–McMoran Inc., a Delaware corporation; IMC Global Inc., a Delaware corporation; IMC Global Operations Inc., a Delaware corporation; Phosphate Resource Partners Limited Partnership, a Delaware limited partnership; the Williams Companies, Inc., a Delaware corporation; and John Does, unknown defendants, Appellees.

No. 99,469.

Supreme Court of Oklahoma.

Nov. 9, 2004.

As Corrected Nov. 17, 2004.

Rehearing Denied June 27, 2005.

John N. Hermes, Sheryl N. Young, McAfee & Taft, Oklahoma City, OK, for appellant.

Michael D. Graves, Ralph E. Seals, Jr., Michael E. Smith, Sharon T. Thomas, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, OK, for The Williams Companies, Inc., appellee.

Thomas G. Wolfe, Ray E. Zschiesche, Phillips McFall McCaffrey, McVay & Murrah, Oklahoma City, appellees other than The Williams Companies, Inc.

TAYLOR, J.

¶ 1 The dispositive questions on certiorari are: 1) Did The Williams Companies, Inc. properly invoke the doctrine of interstate *forum non conveniens?* and 2) Did the nonresident defendants have sufficient contacts with this state to be subject to the jurisdiction of our state courts? As to the first question, we find The Williams Companies, Inc. failed to present evidence that supports application of the doctrine of interstate *forum non conveniens.* As to the second question, we find Agrico Chemical Company had sufficient contacts with this state to subject it to the jurisdiction of the district court, but the other nonresident defendants did not. We hold that the district court erred in dismissing this action against The Williams Companies, Inc. and Agrico Chemical Company and that the district court correctly dismissed this action against the other nonresident defendants for lack of *in personam* jurisdiction. Accordingly, we vacate the opinion of the Court of Civil Appeals, partially reverse the dismissal orders of the District Court and remand this cause for further proceedings.

## I. The Facts and Proceedings Below

¶ 2 Conoco Inc., plaintiff/appellant (Conoco), initiated this contract action in the district court in Oklahoma County against Agrico Chemical Company, defendant/appellee (Agrico); Freeport–McMoran Resource Partners Limited Partnership, Freeport–McMoran Inc., IMC Global Inc., IMC Global Operations Inc., and Phosphate Resource Partners Limited Partnership, defendants/appellees (Agrico entities); and The Williams Companies, Inc., defendant/appellee (Williams). Conoco alleged that Agrico breached a 1972 purchase agreement whereby Conoco sold its fertilizer manufacturing business to Agrico and that Williams breached its guarantee of Agrico's performance under the 1972 purchase agreement. Conoco requested declaratory judgment as to the legal relationship of the parties under the 1972 purchase agreement and guaranty. Conoco also requested damages for the cost of ongoing environmental clean up at a fertilizer manufacturing plant in Charleston, South Carolina.

¶ 3 Basic facts about the parties are that all of them are Delaware corporations or partnerships. Williams is a corporate resident of Oklahoma while Agrico and the Agrico entities are Illinois residents. Conoco is a Texas resident. At the time of entering into the subject contract in 1972, both Agrico and Williams were residents of Oklahoma and Conoco was a New York resident. In 1972, Agrico was a wholly-owned subsidiary of Williams with its principal place of business in Oklahoma. Agrico is now a subsidiary of Phosphate Resource Partners Limited Partnership. Agrico's headquarters remained in Oklahoma until 1988, when it moved to Louisiana and then in 1997, it moved to Illinois. Conoco, Agrico and Williams have been registered to do business in Oklahoma and have done business in Oklahoma since 1972.

¶ 4 The undisputed facts and circumstances relevant to this controversy are that the 1972 purchase agreement was negotiated, at least partially, in Oklahoma at the offices of Agrico and Williams and/or their attorneys. Agrico executed the purchase agreement in Oklahoma. Williams executed the guaranty agreement in Oklahoma. Conoco executed the purchase agreement at its offices in New York. The assets of the fertilizer manufacturing business which Agrico purchased from Conoco were located in several states, including Arkansas, Florida, Kentucky, Illinois, Ohio, Nebraska and South Carolina. This controversy involves a fertilizer manufacturing plant in Charleston, South Carolina called the Ashepoo Site.

¶ 5 Some fifteen years after the 1972 transaction, in the late 1980's, the United States Environmental Protection Agency (EPA) began an investigation of the Ashepoo Site pursuant to the 1980 Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq. During its investigation, the EPA discovered lead contamination at the Ashepoo Site. In 1997, Conoco and Freeport–McMoran Inc., now IMC Global Inc., entered into a consent order with the EPA regarding the contamination and soil testing at the Ashepoo Site. The test results showed that environmental

clean up would be necessary. Conoco and Agrico discussed sharing the cost of the lead contamination clean up but did not reach an agreement. In 1999, Conoco entered into a second consent order with the EPA for clean up of the lead contamination.

¶ 6 Conoco initiated this action to recover the costs of removal of the lead contamination at the Ashepoo Site. Conoco alleged that Agrico's refusal to reimburse it for the clean up costs breached the 1972 purchase agreement. Conoco contended that under the 1972 purchase agreement, Agrico assumed liability for all detriment attributable to the assets conveyed thereunder and agreed to indemnify and defend Conoco against all claims arising out of any act or omission of Agrico after February 1, 1972. Conoco further contended that Williams guaranteed Agrico's performance under the 1972 purchase agreement.

¶ 7 Williams responded with a motion to dismiss based on the doctrine of interstate *forum non conveniens*. Agrico and the Agrico entities responded with motions to dismiss for lack of *in personam* jurisdiction. The parties fully briefed and argued the motions to dismiss before the trial court.

¶ 8 The district court sustained the dismissal motions. Conoco timely filed a motion for new trial or reconsideration in accordance with 12 O.S.2001, § 990.2. The district court overruled the new trial motion. Conoco timely filed a petition in error appealing from the dismissal orders under 12 O.S.2001, §§ 990.2 and 990A. The Court of Civil Appeals affirmed. We previously granted Conoco's petition for writ of certiorari.

## II. Standard of Review

¶ 9 The dispositive questions in this appeal concerning application of the doctrine of interstate *forum non conveniens* and *in personam* jurisdiction are questions of law. We review questions of law by a *de novo* standard, independent of and without deference to the lower court's legal rulings. *Kluver v. Weatherford Hospital Authority*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1083, and *Dewey v. Firefighters Pension and Retirement*, 2001 OK 40, ¶ 7, 28 P.3d 539, 544.

## III. The Doctrine of Interstate *Forum Non Conveniens*

¶ 10 Generally, venue statutes allow the plaintiff a choice of forums in which to bring an action. 12 O.S.2001, §§ 134, et seq. The plaintiff's choice of forum will be disturbed only in exceptional cases. *St. Louis–San Francisco Ry. Co. v. Superior Court*, 1954 OK 223, ¶ 23, 276 P.2d 773, 778. However, a plaintiff may not vex or harass a defendant by the choice of a forum. In such a situation, the district court may determine that a forum in another state will be more appropriate and under the doctrine of interstate *forum non conveniens*, decline to exercise jurisdiction over the action. *Id.*

¶ 11 The doctrine of interstate *forum non conveniens* does not come into play unless there are at least two forums in which the defendant is amenable to process. *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055. The doctrine provides the criteria for the court to choose the appropriate forum from the forums that could secure service of process on the defendant. *Id.* The *forum non conveniens* criteria consider private and public interests. *Gulf Oil Corporation v. Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843. The private interests to be considered include whether the forum 1) is convenient for witnesses, 2) may reach unwilling witnesses by compulsory process, 3) allows a view of the premises, 4) is near the sources of proof, and 5) serves to make trial of the case less burdensome and more convenient. *Id.* The public interests include the burden of jury duty on the community and the community interest in having local controversies decided at home. *Id.* Except where the balance of these interests tilts strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *Id.* Oklahoma adopted these criteria in applying the doctrine of interstate *forum non conveniens*. *St. Louis–San Francisco Ry. Co. v. Superior Court*, at ¶ 23, 276 P.2d at 778.

¶ 12 In the district court and on certiorari, Williams urged that the Oklahoma connections to the 1972 purchase agreement are not relevant to this litigation. According to

Williams, the factors relevant to the doctrine of interstate *forum non conveniens* are the location of witnesses in Georgia and South Carolina and the governing law of New York. Williams argued to the district court that it need not prove that another state will provide a more convenient forum in order to prevail on its motion to dismiss based on *forum non conveniens.*

¶ 13 To bring the doctrine of interstate *forum non conveniens* into play in this case, Williams must show that it is amenable to process in at least two forums. Williams does not, explicitly nor implicitly, admit that it is amenable to process in either Georgia, South Carolina or New York. We have reviewed the record for proof of that critical fact. We find nothing in the record that demonstrates Williams may be served with process issued by a court in Georgia, South Carolina or New York. Rather, the record shows only that Williams is amenable to process in Oklahoma, which is 1) its corporate residence, 2) the place it contracted to guarantee Agrico's performance of the 1972 purchase agreement with Conoco, and 3) the place it denied any liability to Conoco under the 1972 purchase agreement.

¶ 14 Application of the doctrine of interstate *forum non conveniens* lies within the sound discretion of the district court. *St. Louis–San Francisco Ry. Co. v. Superior Court,* at ¶ 23, 276 P.2d at 778. However, this Court will correct an abuse of discretion by the district court in ruling on an interstate *forum non conveniens* motion. *St. Louis–San Francisco Ry. Co. v. Superior Court, Creek County,* 1955 OK 111, ¶ 7, 290 P.2d 118, 120. We will reverse for abuse of discretion if the district court reached a conclusion that is clearly against the evidence and reason. *Abel v. Tisdale,* 1980 OK 161, ¶ 20, 619 P.2d 608, 612.

¶ 15 Williams failed to meet its burden to prove that it is amenable to process in any of the forum states of Georgia, South Carolina or New York which it argued are more appropriate to litigate this contract action. In

the absence of such a showing, the district court's conclusion to apply the doctrine of interstate *forum non conveniens* was clearly without evidentiary support and against reason. Accordingly, we find the district court abused its discretion in granting Williams' motion to dismiss on the doctrine of interstate *forum non conveniens.*

## IV. *In Personam* Jurisdiction over Nonresident Corporations

¶ 16 *In personam* jurisdiction is the power to deal with the person of the defendant and to render a binding judgment against the defendant. *Hobbs v.German-American,* 1904 OK 60, ¶ 5, 78 P. 356, 357 (Sup.Ct. of Okla. Terr.). Jurisdiction of the person is acquired by service of process or by voluntary appearance before the court. *Id.* The process by which a person is summoned into court is governed by statute. 12 O.S.2001, § 2004.[1] Subsection (F) of § 2004, referred to as the long-arm statute, authorizes service of process outside of the state.

¶ 17 Section 2004(F) provides that a "court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." The intent of our long-arm statute is to extend the jurisdiction of the Oklahoma courts to the outer limits permitted by the Oklahoma Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Fields v. Volkswagen of America, Inc.,* 1976 OK 106, ¶ 6, 555 P.2d 48, 52. The outer limits of due process in this regard have been established by the United States Supreme Court.

¶ 18 The Due Process Clause protects a person's liberty interest in not being subjected to a binding judgment in a forum where the person has no meaningful contacts, ties or relations. *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985). Due process requires only that a nonresident defendant have certain minimum contacts with

---

1. Although 12 O.S.2001, § 2001 has been amended, the provisions of the long-arm statute in subsection (F) remains the unchanged.

the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Minimum contacts or presence in a state depends upon the quality and nature of the activity in relation to the fair and orderly administration of the laws. *Id.,* 326 U.S. at 319, 66 S.Ct. at 160. Minimum contacts analysis focuses at the threshold on defendant's purposeful connection to the forum. *Shaffer v. Heitner,* 433 U.S. 186, 203, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977).

 ¶ 19 When a nonresident corporation exercises the privilege of conducting activities in a state, it also enjoys the benefits and protections of the laws of that state and any obligations connected with that activity may be enforced in that state's courts. *International Shoe Co. v. State of Washington,* 326 U.S. at 319, 66 S.Ct. at 160. The focus is on whether there is some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could have reasonably anticipated being haled into court in that state. *World–Wide Volkswagen Corporation v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). A single act can support jurisdiction so long as it creates a substantial connection with the forum state. *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). For purposes of due process, jurisdiction is proper if the suit was based on a contract that has substantial connection with the state. *Id.,* 355 U.S. at 224, 78 S.Ct. at 201.

 ¶ 20 When *in personam* jurisdiction over a party is at issue, the record before a court must affirmatively demonstrate the court's jurisdiction. *Roberts v. Jack Richards Aircraft Co.,* 1975 OK 72, 536 P.2d 353. Where the party is a nonresident, the record must affirmatively demonstrate the minimum contacts required to satisfy due process. *Crescent Corporation v. Martin,* 1968 OK 95, 443 P.2d 111. On *de novo* review, this Court will canvass the record for proof that the nonresident party had sufficient contacts with the state to assure that traditional notions of fair play and substantial justice would not be offended if this state exercised *in personam* jurisdiction. *Barnes v. Wilson,* 1978 OK 97, 580 P.2d 991.

 ¶ 21 Turning to this case, the evidence of Agrico's contacts with the State of Oklahoma is more than sufficient to allow the district court to enter a binding judgment against it in this contract controversy. Agrico negotiated and executed its 1972 purchase agreement in Oklahoma. At the time, Agrico was a resident of Oklahoma and was doing business in Oklahoma. For more than fifteen years after the making of the contract, Agrico remained a resident of Oklahoma and enjoyed the benefits and protections of the laws of Oklahoma. Agrico's conduct and connection with Oklahoma have been such that it could reasonably anticipate being haled into our courts to enforce the 1972 purchase agreement. The quality and nature of Agrico's conduct in Oklahoma cannot be viewed as random or insubstantial. Although Agrico is no longer a corporate citizen of Oklahoma, its contacts and ties to Oklahoma far exceed the minimum contacts requirement. The evidence clearly establishes substantial connections with this state such that the district court may exercise *in personam* jurisdiction over Agrico in this contract action.

 ¶ 22 On the other hand, there is very little evidence of contacts with the State of Oklahoma by the Agrico entities. The record shows that the Agrico entities are registered to do business in Oklahoma and that they file state income tax returns even though the return reports no tax liability. It also shows that the business management and operation of Agrico and the Agrico entities are interrelated. Agrico is a wholly-owned subsidiary of Phosphate Resource Partners Limited Partnership, formerly Freeport–McMoran Resource Partners Limited Partnership. Phosphate Resource Partners Limited Partnership manages Agrico

and the Agrico entities. Phosphate Resource Partners Limited Partnership and IMC Global Operations are general partners in IMC Phosphates. IMC Phosphates Company sells fertilizer in Oklahoma and forty-six other states, but IMC Phosphates Company is not a party to this contract action.

¶ 23 Conoco argues that the Agrico entities have sufficient minimum contacts with this state because of their relationship with Agrico. The evidence of the overlapping business management relationship between Agrico and the Agrico entities simply does not satisfy the *International Shoe Co.* minimum contacts requirement. We have canvassed the record for proof that the Agrico entities have sufficient contacts with Oklahoma to assure that traditional notions of fair play and substantial justice would not be offended if this state exercised *in personam* jurisdiction. The record does not demonstrate that the nonresident Agrico entities have sufficient contacts with Oklahoma. Accordingly, the district court correctly dismissed this action against the Agrico entities for lack of *in personam* jurisdiction.

### V. Conclusion

¶ 24 The district court erred in dismissing Conoco's action against Williams on the doctrine of interstate *forum non conveniens.* Williams failed to make a showing that it is amenable to process in at least one other state. Therefore, the district court's conclusion to apply the doctrine of interstate *forum non conveniens* was clearly without evidentiary support and against reason. The district court also erred in dismissing Conoco's action against Agrico for lack of *in personam* jurisdiction. The evidence clearly establishes substantial connections with this state such that the district court may exercise *in personam* jurisdiction over Agrico in this contract action. The district court correctly dismissed this action against the Agrico entities for lack of *in personam* jurisdiction.

**COURT OF CIVIL APPEALS OPINION VACATED; DISTRICT COURT ORDERS DISMISSING THE WILLIAMS COMPANIES, INC. AND AGRICO CHEMICAL COMPANY REVERSED; DISTRICT COURT OR-**

**DERS DISMISSING THE OTHER NONRESIDENT DEFENDANTS AFFIRMED; CAUSE REMANDED FOR FURTHER PROCEEDINGS.**

¶ 25 WATT, C.J., and LAVENDER, HARGRAVE, KAUGER, EDMONDSON and COLBERT, JJ., concur.

¶ 26 WINCHESTER, J., not participating.