2006 OK CIV APP 121

**CENTRAL RURAL ELECTRIC COOPERATIVE, Plaintiff/Appellee,**

v.

**CITY OF STILLWATER, Oklahoma, and Stillwater Utilities Authority, Defendants/Appellants.**

Kay Electric Cooperative, Plaintiff/Appellee/Counter–Appellant,

v.

City of Tonkawa, Oklahoma, and Tonkawa Municipal Authority, Defendants/Appellants/Counter–Appellees.

Oklahoma Electric Cooperative, and Municipal Electric Systems of Oklahoma, Inc., Intervenors.

No. 101,830.

Court of Civil Appeals of Oklahoma, Division No. 2.

March 21, 2006.

Certiorari Denied Oct. 3, 2006.

Larry Derryberry, Derryberry, Quigley, Solomon & Naifeh, Oklahoma City, OK, and Max C. Meyers, Drummond Law Firm, Tulsa, OK, for Central Rural Electric Cooperative.

John E. Dorman, City Attorney, Stillwater, OK, for City of Stillwater and Stillwater Utilities Authority.

Jonathan C. Ihrig, Jonathon C. Ihrig & Associates, Blackwell, OK, for Kay Electric Cooperative.

Bryce S. Kennedy, Jr., City Attorney, City of Tonkawa, Enid, OK, for City of Tonkawa and Tonkawa Municipal Authority.

H.L. Heiple, Heiple Law Offices, Inc., Norman, OK, for Oklahoma Electric Cooperative.

C. Max Speegle, Edmond, OK, for Municipal Electric Systems of Oklahoma, Inc.

Opinion by JANE P. WISEMAN, Presiding Judge.

¶ 1 In this appeal involving application of the Electric Restructuring Act of 1997, 17 O.S.2001 & Supp.2005 §§ 190.1 through 190.20, Appellants, City of Stillwater and Stillwater Utilities Authority (collectively, Stillwater) and City of Tonkawa and Tonkawa Municipal Authority (collectively, Tonkawa), appeal an order of the trial court granting injunctive relief against them and in favor of Appellees, Central Rural Electric

Cooperative (CREC) and Kay Electric Cooperative (KEC). KEC counter-appeals the trial court's finding that Tonkawa could extend its electrical facilities outside its corporate boundaries to serve Tonkawa's sewage lift station. Having reviewed the record and applicable law, we find that the trial court erred in granting injunctive relief to CREC and KEC, but did not err in ruling that Tonkawa could extend its electrical facilities to serve its sewage lift station.

¶2 The facts of this case are undisputed and are partially recited in the trial court's judgment as follows:

1. [CREC and KEC] are Rural Electric Cooperatives created pursuant to the Rural Electric Cooperative Act, 18 O.S. § 437 et seq. and are engaged in the business of delivering electric service to users thereof at retail.

2. [Stillwater and Tonkawa] are engaged in the business of delivering electric service to users thereof at retail.

3. Defendants, Stillwater and Tonkawa through their individual actions have each elected to participate in electric restructuring and retail consumer choice as provided in the Electric Restructuring Act of 1997, 17 O.S. § 190.1 et seq.

4. Defendant, Stillwater since electing to participate in the 1997 act has extended its electric service outside the City limits of Stillwater to consumers situated within the Certified Territory of CREC, established pursuant to 17 O.S. § 158.24.

5. Defendant, Tonkawa since its election to participate in the 1997 act has extended its electric service outside the city limits of Tonkawa to a sewage lift station owned by Tonkawa and to a barn property to which Tonkawa had furnished electric service for many years, both of which are situated within the certified territory of [KEC], established pursuant to 17 O.S. § 158.24.

It is also undisputed that the consumer to which Stillwater provided service had not been served previously by CREC and had requested service from Stillwater, and the customer and sewage station to which Tonkawa provided service had not been served previously by KEC.

¶3 CREC and KEC sued Stillwater and Tonkawa, respectively,[1] asking that the trial court enjoin Stillwater and Tonkawa from extending any electric distribution system lines outside their corporate city limits and asking that it require Stillwater and Tonkawa to remove any electrical disposition poles and lines from the areas located outside their corporate limits. On motions for summary judgment filed by CREC and KEC, the trial court held that, because Stillwater and Tonkawa have opted to become subject to the Electric Restructuring Act, they are prohibited from extending service to consumers located in another supplier's territory as established under the Retail Electric Supplier Certified Territory Act, 17 O.S.2001 & Supp. 2005 §§ 158.21 through 158.32. The trial court concluded, however, that Tonkawa did not violate the law by extending service to its own sewage lift station. The trial court therefore granted the injunctive relief requested by CREC and KEC, with the exception of service by Tonkawa to its sewage lift station. Stillwater and Tonkawa appeal the order granting injunctive relief to CREC and KEC, and KEC counter-appeals the order to the extent it allows Tonkawa to provide service to its sewage lift station.

¶4 This appeal requires interpretation of the Electric Restructuring Act (the "Act") and application of the Act to undisputed facts; it therefore presents a question of law which we review *de novo,* giving no deference to the trial court's ruling. *See Conoco Inc. v. Agrico Chemical Co.,* 2004 OK 83, ¶9, 115 P.3d 829, 833.

¶5 The Legislature's stated purpose for passage of the Act is to "provide for the orderly restructuring of the electric utility industry in the State of Oklahoma in order to allow direct access by retail consumers to the competitive market for the generation of

1. CREC sued Stillwater in Payne County in Case No. CJ–2003–676, and KEC sued Tonkawa in Kay County in Case No. CJ–2003–05B. It appears from the record and the docket statements that the District Court of Payne County agreed to hear both cases together due to the similar nature of the claims. Although its order was filed in the Payne County case, it also lists the Kay County case in the style and grants judgment to both CREC and KEC.

electricity while maintaining the safety and reliability of the electric system in this state." 17 O.S.2001 § 190.2. Although the Legislature set July 1, 2002, as the target date for implementation of a competitive market, it also recognized that it is necessary to thoroughly assess the issues and consequences to "ensure a successful transition to a competitive marketplace." 17 O.S.2001 § 190.2. To achieve these goals, the Legislature established the Joint Electric Utility Task Force (Task Force) to study the relevant issues relating to restructuring. 17 O.S. 2001 § 190.4(A). The Act makes it clear that restructuring was not effective upon passage of the Act, but would require future implementing legislation and regulations after study by the Task Force. 17 O.S.2001 § 190.4. *See*, e.g., § 190.4(B)(1) (appropriate rules "shall be promulgated" regarding reliability and safety); § 190.4(B)(3), (5) (contemplating establishment of a process to allow consumers to choose); § 190.4(B)(7) (contemplating establishment of "firm service territories ... by a date certain, if not currently established by law in order to avoid wasteful duplication of distribution facilities"); § 190.4(B)(10), (11) (contemplating establishment of a defined transition period, during which time rates would not rise). The statute establishing the Task Force was a sunset law that expired on January 1, 2003, and the authorizing legislation was repealed effective July 1, 2003. 17 O.S. Supp.2003 § 190.6.

¶ 6 Prior to expiration of the Task Force, the Legislature, effective June 4, 2001, set up the Electric Restructuring Advisory Committee to the Governor and the Legislature to continue examining restructuring issues. 17 O.S.2001 § 190.20. Section 190.20(G) provided that, notwithstanding any prior legislation setting an implementation goal,

> [C]onsumer choice of retail electric energy suppliers shall not be implemented in this state until: 1. The final report of the Advisory Committee has been received by the Governor, the President Pro Tempore of the Senate and the Speaker of the House of Representatives; and 2. Electric restructuring enabling legislation is adopted by the Legislature and signed by the Governor.

Like the legislation establishing the Task Force, § 190.20 was a sunset law and expired by its terms on January 1, 2005, with the authorizing legislation being repealed effective July 1, 2005. 17 O.S. Supp.2005 § 190.20.

¶ 7 The Act's definition of "retail electric service distributor" does not include "[a]ny municipal corporation or beneficial trust thereof or the Grand River Dam Authority." 17 O.S.2001 § 190.3(8). But, municipal corporations and beneficial trusts can choose to be bound by the Act:

> Any municipal corporation or beneficial trust thereof or the Grand River Dam Authority may, through its own nonrevocable election, voluntarily opt to become subject to the provisions of this act to participate in electric restructuring and retail consumer choice by adopting a resolution stating that all service provided via facilities owned by such entities will be rendered on an open access nondiscriminatory basis in a manner consistent with the provisions of such service by retail electric service distributors subject to this act....

Both Stillwater and Tonkawa "opted in."

¶ 8 The Act contains two prohibitions regarding provision of electrical service that are pertinent to this case:

> A. Electric distribution providers governed by the Retail Electric Supplier Certified Territory Act, Section 158.21 et seq. of this title or *municipal corporations or beneficial trusts thereof owning or operating a retail electric distribution system* or the Grand River Dam Authority shall not furnish retail electric service to an electric consuming facility *which is currently being served, or which was being served and the permanent electric facilities are in place to render such service,* by a municipal corporation or beneficial trust thereof, a rural electric cooperative or an investor-owned electric utility or the Grand River Dam Authority until enactment of electric restructuring enabling legislation and the implementation of consumer choice of retail electric energy suppliers unless the entities involved have agreed by mutual consent, in writing, to such transaction. For the purpose of this section, "electric distri-

bution providers" shall mean the same as "retail electric service distributors" as defined by Section 190.3 of this title.

B. *Any municipal corporation or beneficial trust* thereof offering retail electric distribution service from a municipally or trust-owned electric distribution system *that decides **not** to participate in the provisions of this act as outlined in Section 190.3 of this title shall be prohibited from extending a retail electric distribution primary feeder system beyond its corporate limits* with the exception that it may continue to offer retail electric distribution service through the addition of secondary service drops from the primary feeder system it owned outside the corporate limits of such municipality on April 25, 1997. Provided, however, nothing contained in this section shall be construed to prohibit system maintenance, repairs or upgrades to such primary distribution feeder system outside the corporate limits except that secondary service drops shall not be upgraded to primary distribution lines.

17 O.S.2001 § 190.7 (emphasis added).

¶ 9 We must agree with Stillwater and Tonkawa that they did not violate the Act, which only prohibits them from furnishing retail electric service to someone who was already being served by another entity. Stillwater's line serves one customer, who requested service from Stillwater and who had not been receiving service from CREC. One of Tonkawa's electrical lines that is in dispute serves a barn that Tonkawa had been serving for many years, but which, when sold as a separate tract to a different owner, was no longer served by Tonkawa; KEC had not previously served this barn. The other Tonkawa line in dispute serves Tonkawa's own sewage lift station, which had not been previously served by KEC. Neither Stillwater nor Tonkawa is furnishing "retail electric service to an electric consuming facility *which is currently being served, or which was being served and the permanent electric facilities are in place to render such service,* by ... a rural electric cooperative or an investor-owned electric utility." 17 O.S.2001 § 190.7(A) (emphasis added).

¶ 10 CREC and KEC focus on subdivision B of § 190.7, which prohibits a municipal corporation or beneficial trust *"that decides not to participate"* in restructuring under the Act from "extending a retail electric distribution primary feeder system beyond its corporate limits." (Emphasis added.) This subdivision does not apply to Stillwater and Tonkawa which both decided to participate in restructuring under the Act. Oklahoma law also provides that municipalities may extend their energy lines beyond their corporate limits. 11 O.S.2001 § 35–101. We see nothing in the Act that changes the right of a municipality that has opted to participate in restructuring to extend electric service beyond its corporate boundaries, within the limits of § 190.7(A). While legislation implementing restructuring may limit Stillwater's and Tonkawa's right to extend service beyond their corporate limits because they have opted into restructuring, there is nothing in the Act as written that prohibits them from doing so at this time, and implementing legislation has yet to be enacted.

¶ 11 CREC and KEC argue that, even though Stillwater and Tonkawa opted in to restructuring, they are nonetheless bound by § 190.7(B) which, on its face, applies only to municipalities and beneficial trusts that *did not* opt in. They argue that Stillwater and Tonkawa are "bound by the legislative intent to ensure an orderly and equitable restructuring of the electric utility industry pursuant to enabling legislation yet to be implemented and [are] specifically bound by the provisions thereof that firm service territories shall be fixed, and all related applicable laws." The clear language of the Act, however, postpones implementation of restructuring until passage of enabling legislation. Additionally, the Act's reference to fixing of firm territories is a reference to future action—action that cannot be taken until enabling legislation has been passed. We see nothing in the language of the Act that requires a finding that municipalities that have "opted in" may not extend service beyond their corporate borders, within the limits of § 190.7(A).

¶ 12 The trial court erred in granting injunctive relief to CREC and KEC. On re-

mand, the trial court shall enter judgment for Stillwater and Tonkawa and against CREC and KEC. For the reasons stated above, the trial court did not err in finding that Tonkawa did not violate the Act by providing electric service to its sewage lift station. The trial court's decision in that regard is therefore affirmed.

¶ 13 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.

GOODMAN, J., and GABBARD, J. (sitting by designation), concur.