2009 OK CIV APP 90

**WILLBROS USA, INC.,**
**Plaintiff/Appellant,**

v.

**CERTAIN UNDERWRITERS AT LLOYDS OF LONDON; Arthur J. Gallagher & Co. of Oklahoma, Inc.; and JLT Risk Solutions, Limited, Defendants/Appellees.**

No. 106,414.

Court of Civil Appeals of Oklahoma, Division No. 2.

Sept. 24, 2009.

1168

Larry B. Lipe, M. Freeman–Burney, Paige N. Shelton, Conner & Winters, LLP, Tulsa, OK, for Plaintiff/Appellant.

M. Benjamin Singletary, Lisa T. Silvestri, Gable Gotwals, Tulsa, OK, for Defendant/Appellee JLT Risk Solutions, Limited.

DEBORAH B. BARNES, Presiding Judge.

¶ 1 This appeal[1] arises out of an insurance coverage dispute and insurance broker malpractice action. Plaintiff, Willbros USA, Inc. (Willbros), filed a Petition[2] on July 27, 2007, against three defendants, Certain Underwriters at Lloyds of London (Lloyds),[3] Arthur J. Gallagher & Co. of Oklahoma, Inc. (Gallagher), and JLT Risk Solutions, Limited (JLT), after certain excess claims liability insurance coverage was denied to Willbros.

¶ 2 The question on appeal is: did the London-based insurance broker defendant, JLT, have sufficient contacts with this state to be subject to the jurisdiction of our state courts? We find JLT had sufficient contacts with this state to subject it to the jurisdiction of the trial court. We therefore reverse the order of the trial court dismissing JLT from the lawsuit for lack of personal jurisdiction.

## PROCEDURAL BACKGROUND

¶ 3 JLT is a London-based insurance broker with its principal place of business in London, England, United Kingdom. Gallagher is an Oklahoma company with its principal place of business in Tulsa, Oklahoma. Willbros is a Delaware corporation with its principal place of business in Houston, Texas. Willbros' Risk Management Department is located in Tulsa, Oklahoma, where the corporate risk manager, Robert H. Redden (Redden), maintains his office.

---

**1.** This is an accelerated appeal. Rule 1.36, Okla. Sup.Ct. Rules, 12 O.S. Supp.2004, ch. 15, app. 1.

**2.** The Petition alleges claims for breach of contract, breach of the duty of good faith and fair dealing, and negligence, requesting compensato-ry and punitive damages, as well as attorney fees, costs, and interest.

**3.** Pursuant to the joint stipulation of Willbros and Lloyds, the lawsuit was dismissed with prejudice only as to Lloyds, on January 18, 2008.

¶ 4 Gallagher is the retail broker for the insurance in question, and JLT is the excess broker. The policy at issue is a $25 million dollar worldwide excess liability policy (the Policy) underwritten by Lloyds, and Willbros is the named insured under the Policy. The Policy, together with its underwriter, was successfully secured by JLT after Gallagher contacted JLT for this purpose, on behalf of Willbros. Gallagher placed the Policy in the London insurance market using JLT as the London broker. The coverage period under the Policy was from March 1, 2004, to March 1, 2005.

¶ 5 On April 22, 2004, several individuals were killed on Olero Creek in the Nigerian river delta while working on a project for Chevron Nigeria, Limited (Chevron), in which Willbros Nigeria, Limited, was a subcontractor providing support services. Willbros states that in June of 2004, families of two of the decedents filed wrongful death lawsuits against Chevron in Houston, Texas. In September of 2005, after having settled their claims against Chevron, these families filed suit against Willbros. Willbros states that it reached a settlement agreement with these families, but, after exhausting the $1 million dollar limit on its primary coverage, Willbros was forced to pay $2,310,000 out of pocket.

¶ 6 Willbros claims that notice of the Olero Creek incident was properly given to their insurance brokers, Gallagher and JLT. Willbros claims, however, that Gallagher and/or JLT negligently failed to give proper and timely notice to Lloyds. Lloyds subsequently used late notice as one of the grounds for refusing to pay the $2,310,000 excess claim under the Policy.

■ ¶ 7 On October 19, 2007, JLT filed a Motion to Dismiss for Lack of Personal Jurisdiction (JLT's Motion to Dismiss). On January 18, 2008, Willbros responded to JLT's Motion to Dismiss, and on February 13, 2008, JLT replied to Willbros' response. In the order filed on April 25, 2008, the trial court granted JLT's Motion to Dismiss under 12 O.S. Supp.2004 § 2012(B)(2).[4] Although the trial court found that the evidentiary materials presented by Willbros "show that [JLT] made annual trips to Oklahoma from 2002 through 2006 to call on Gallagher and Willbros," the trial court held that these contacts were not sufficient to establish specific or general personal jurisdiction. The trial court found that the evidence of JLT's contacts in Oklahoma with Gallagher, a co-defendant who had a direct business relationship with Willbros, constituted merely indirect, "overlapping" business relationship contacts with Willbros.

¶ 8 In sum, the trial court found that the evidentiary materials showed "very little evidence of purposeful contacts in Oklahoma with [Willbros]" and held that JLT's contacts were "not sufficient to demonstrate that traditional notions of fair play and substantial justice would not be offended if [Oklahoma] exercised *[in] person[a]m* jurisdiction." Pursuant to 12 O.S.2001 § 994(A), the trial court, on October 8, 2008, certified as final its order filed on April 25, 2008. Willbros appeals. The only issue on appeal is whether the Oklahoma district court has personal jurisdiction over JLT.

## MATERIAL FACTS NOT IN DISPUTE

¶ 9 1. JLT is a London-based insurance broker with its principal place of business in London, England, United Kingdom. Gallagher is an Oklahoma company with its principal place of business in Tulsa, Oklahoma. Willbros is a Delaware corporation with its principal place of business in Texas. Willbros' Risk Management Department is located in Tulsa, Oklahoma, where the corporate risk manager, Redden, maintains his office.[5]

¶ 10 2. Gallagher placed the Policy with Lloyds in the London insurance market using JLT as the London broker.[6]

---

4. The trial court incorrectly found that "[s]ince [JLT's Motion to Dismiss] also tenders for consideration materials outside the pleadings, summary judgment procedure must be utilized." This procedure applies to motions to dismiss for failure to state a claim upon which relief can be granted under 12 O.S. Supp.2004 § 2012(B)(6), but does not apply to motions to dismiss for lack of personal jurisdiction under 12 O.S. Supp.2004 § 2012(B)(2). *See* 12 O.S. Supp.2004 § 2012(B).

5. Record (R.), Tabs 4, 7–8; Corrected Record (C.R.), Tab 2.

6. R., Exh. A to Tab 7, Affidavit of JLT representative Julian P. Wilson, ¶ 2.

**1172**

¶ 11 3. JLT was successful in placing the Policy directed by Gallagher.[7]

¶ 12 4. The Policy was issued to Willbros.[8]

¶ 13 5. JLT did not travel to Oklahoma to work on the placement of the Policy; instead, JLT placed the Policy from its principal place of business in London, England.[9]

¶ 14 6. JLT admits it has made several visits to Oklahoma-described by JLT as "infrequent and minimal," and "isolated and informal"—to meet with employees of Gallagher and/or Willbros. Simon Edwards of JLT admits going to Gallagher's offices twice.[10]

¶ 15 7. JLT representatives, Julian P. Wilson, Simon R. Edwards, and Steve Bertenshaw, personally met with Gallagher employees and Redden, the corporate risk manager for Willbros,[11] giving Redden their business cards while in Oklahoma.

¶ 16 8. Some business was discussed "in passing" during these Oklahoma visits.[12]

¶ 17 9. JLT's communication with Gallagher also included electronic messages, telephone conversations, and mail.[13]

## STANDARD OF REVIEW

 ¶ 18 The only issue on appeal concerns *in personam* jurisdiction, which is a question of law. *Conoco, Inc. v. Agrico Chemical Company*, 2004 OK 83, 115 P.3d 829. "We review questions of law by a *de novo* standard, independent of and without deference to the lower court's legal rulings." *Id.* at ¶ 9. (Citations omitted.) On *de novo*

7. R., Tab 9, Affidavit of JLT representative Simon R. Edwards, ¶ 5.

8. R., Exh. A to Tab 7, Affidavit of JLT representative, Julian P. Wilson, ¶ 2.

9. *Id.*

10. *Id.* at ¶ 3; Exh. A to Tab 9, Affidavit of JLT representative Simon R. Edwards, ¶ 3; C.R., Tab 3, Affidavit of Daniel D. Pickard, ¶¶ 6–7.

11. R., Tab 9; C.R., Tab 2, Affidavit of Willbros representative Robert H. Redden, at p. 2, and Tab 3, p. 2.

12. R., Tab 9; Affidavit of JLT representative Simon R. Edwards, ¶ 3.

13. C.R., Tab 3, Affidavit of Daniel D. Pickard, and attached exhibits (e-mail communications).

review of personal jurisdiction, this Court will "canvass the record" to assure that the minimum contacts required to satisfy due process are "affirmatively demonstrate[d]" and "that traditional notions of fair play and substantial justice would not be offended if this state exercised *in personam* jurisdiction." *Id.* at ¶ 20. (Citations omitted.)

## ANALYSIS

### *Specific Personal Jurisdiction—Minimum Contacts*

 ¶ 19 Oklahoma's long-arm statute extends the jurisdiction of its courts to the full extent of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. 12 O.S. Supp.2002 § 2004; *Conoco, Inc.*, at ¶ 17, 115 P.3d at 834. The Due Process Clause "requires only that a nonresident defendant have certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at ¶ 18, 115 P.3d at 834–835. The Due Process Clause protects a nonresident's liberty interest in not being subjected to a binding judgment in a forum where it has no meaningful contacts, ties or relations. *Id.* at ¶ 18, 115 P.3d at 834. However, "a nonresident who engages in a single act or consummates a single transaction in a foreign state could be amenable to suit for damages arising out of that transaction." *Hough v. Leonard*, 1993 OK 112, ¶ 8, 867 P.2d 438, 443.[14] The determination "depends upon the

14. For example, in *McGee v. International Life Insurance Company*, the United States Supreme Court found that "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Conversely, where any single act would be insufficient, specific personal jurisdiction can be based on the totality of contacts with the forum. *Hough v. Leonard*, 1993 OK 112, 867 P.2d 438. In *Hough*, the Oklahoma Supreme Court held that "[w]hile each individual contact made by the non-residents may not be sufficient standing alone to maintaining minimum contacts, the totality of the contacts are sufficient to exercise personal jurisdiction over the non-residents." *Id.* at ¶ 13, 867 P.2d at 444.

quality and nature of the activity in relation to the fair and orderly administration of the laws." *Conoco, Inc.*, at ¶ 18, 115 P.3d at 835. "The focus is on whether there is some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* at ¶ 19, 115 P.3d at 835.

 ¶ 20 The appropriate question is not whether the defendant has sufficient contacts with the plaintiff, but whether the defendant has sufficient contacts with the forum state. *Vons Companies, Inc. v. Seabest Foods, Inc.*, 14 Cal.4th, 434, 58 Cal.Rptr.2d 899, 926 P.2d 1085 (1996), *cert. denied*, 522 U.S. 808, 118 S.Ct. 47, 139 L.Ed.2d 13 (1997). The relationship among the defendant, the forum, and the litigation is the proper focus. *Gilbert v. Security Finance Corporation of Oklahoma, Inc.*, 2006 OK 58, 152 P.3d 165. Finally, in order for a court to find personal jurisdiction over a nonresident defendant based upon minimum contacts with the state, the controversy must arise out of, or be related to, those contacts.[15] *Deerinwater v. Circus Circus Enterprises*, 2001 OK CIV APP 37, 21 P.3d 646.

¶ 21 In regard to JLT, the controversy arises out of the Policy and JLT's alleged breach of contract, breach of the duty of good faith and fair dealing and negligence regarding Willbros' claim under the Policy. Therefore, in determining whether JLT had sufficient minimum contacts with Oklahoma, we must look only to those contacts with Oklahoma that are related to the Policy.

 ¶ 22 First, JLT elected to do business with Gallagher, an Oklahoma company. "Regardless of who initiated the contact, the non-residents could have refused to enter into a contract and thereby alleviated the risk of defending a suit commenced in Oklahoma." *Hough v. Leonard*, 1993 OK 112,

¶ 13, 867 P.2d 438, 444. By choosing to do business with an Oklahoma company, JLT purposefully availed itself of the privilege of conducting activities within Oklahoma. Personal jurisdiction is not defeated by the fact that JLT secured the Policy entirely in a foreign market. Rather, the minimum contacts test evolved out of, and for, this very type of situation. *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ("... due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it ..."). "Jurisdiction may not be avoided merely because the nonresident did not physically enter the forum state." *Hough*, at ¶ 7, 867 P.2d at 442. JLT had the ability to decline to do business with Gallagher. Instead, it knowingly transacted business with this Oklahoma corporation for the benefit of another corporation, Willbros, whose Risk Management Department was located in Oklahoma. JLT purposefully directed its activities toward Oklahoma, and the controversy arose out of, or was related to, these contacts.

¶ 23 Secondly, between 2002 and 2006, prior to and during the effective period of the Policy, JLT made several trips to Oklahoma where its representatives met with representatives of Willbros and Gallagher. During these visits at least some business was discussed in relation to the Policy. JLT asserts, however, that the Policy was not the principal topic of discussion, and these London–to–Oklahoma trips should be characterized as "social visits." For example, Simon R. Edwards, a JLT representative, states in his affidavit that "these visits were mid-policy term, not at a time when serious coverage

---

**15.** On the other hand, if the controversy is unrelated to a defendant's contacts with the forum state, or if the contacts related to the controversy are insufficient to satisfy due process, then a court can only exercise personal jurisdiction if there exist "continuous and systematic contacts" with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Such personal jurisdiction is termed general, rather than specific, and allows a court to exercise personal juris-

diction over a nonresident defendant for any controversy, even one unrelated to the defendant's business relationship to the forum. *Id.* However, if the minimum contacts test is met for purposes of specific personal jurisdiction, then no further inquiry is needed. *In personam* jurisdiction may be either general or specific. *Deerinwater v. Circus Circus Enterprises*, 2001 OK CIV APP 37, 21 P.3d 646. Therefore, having found specific personal jurisdiction, we need not address general personal jurisdiction.

needs might have been addressed." He further states that he "only recall[s] going to Gallagher's office twice." Regardless, JLT admits there was at least some direct connection between these visits and the Policy.

¶ 24 Thirdly, during this same time period, JLT maintained communication from its London offices with Gallagher in Tulsa. Although some of this communication regarded only the brokering of insurance generally, a certain amount was directed to the Policy specifically. This communication took the form of e-mail, telephone conversations, and mail. Telephone calls and letters alone may provide sufficient contacts for the existence of personal jurisdiction. *Rambo v. American Southern Insurance Co.*, 839 F.2d 1415 (10th Cir.1988).

¶ 25 JLT's voluntary election to do business in Oklahoma, its visits to Oklahoma, and the stream of communication it maintained with Gallagher and Willbros in Tulsa, constitute an effort by JLT to "purposefully avail[ ] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). (Citation omitted.) We find that JLT's election to do business with an Oklahoma entity and its personal, electronic, and postal communications within Oklahoma, constitute minimum contacts with this state, and that the controversy arose out of, or was related to, these contacts.

### Specific Personal Jurisdiction—Fair Play and Substantial Justice

¶ 26 "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). (Citation and internal quotation omitted.) In this reasonableness inquiry, a court should consider the following factors: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the

shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

### 1. Burden on the Defendant

¶ 27 "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Id.* at 115, 107 S.Ct. 1026. (Citation and internal quotation omitted.) However, "modern transportation and communication have made it much less burdensome for a party sued to defend [itself] in a State where [it] engages in economic activity." *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). "[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern. Certainly, in this age of instant communication, and modern transportation, the burdens of litigating in a distant forum have lessened." *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206, 1212–1213 (10th Cir.2000). (Citations and internal quotation omitted.) Additionally, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi*, 480 U.S. at 114, 107 S.Ct. 1026.

¶ 28 JLT has demonstrated its willingness and ability to not only communicate with residents of Oklahoma, but also to travel to Oklahoma for its business operations. We find that the burden placed on JLT in defending itself in our courts would not rise to a level of constitutional concern.

### 2. Interests of Oklahoma

¶ 29 Oklahoma generally has a "manifest interest" in providing its residents a convenient forum to litigate the injuries inflicted by out-of-state actors. *See Burger King Corp., v. Rudzewicz*, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). (Citation omitted.) Gallagher is an Oklahoma resident and Willbros' Risk Management Department is located in Oklahoma. Oklahoma has an interest in providing Willbros a forum for this suit.

### 3. *Plaintiff's Interest in Obtaining Relief in Oklahoma*

¶ 30 This factor "hinges on whether the Plaintiff may receive convenient and effective relief in another forum." *OMI Holdings, Inc. v. Royal Insurance Company of Canada,* 149 F.3d 1086, 1097 (10th Cir. 1998). It would be a substantial inconvenience for Willbros if it were forced to litigate this case in London, a distant forum with unfamiliar procedural rules, rather than in Oklahoma. Additionally, we have already determined that JLT has purposefully established minimum contacts within Oklahoma *related to the controversy;* such contacts do not exist in any other state. Therefore, Willbros has a strong interest in resolving the entire dispute in Oklahoma.

### 4. *Interstate Judicial System's Interest in Obtaining Efficient Resolution*

¶ 31 An efficient resolution can be obtained in Oklahoma. JLT's purposefully directed activities relating to the controversy did not rise to the level of minimum contacts in any other state. Therefore, Oklahoma is the only forum in the United States that could properly exercise personal jurisdiction over JLT in this matter, and it is in the judicial system's interest of obtaining efficient resolutions of controversies that Oklahoma exercise personal jurisdiction over JLT.

### 5. *Interests of Other Sovereigns*

¶ 32 This final factor focuses on whether the exercise of personal jurisdiction by Oklahoma affects the substantive social policy interests of the other states or foreign nations. *Id.* While great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field, "[t]he possible conflict with a foreign nation's sovereignty is not dispositive

because, if given controlling weight, it would always prevent suit against a foreign national in a United States court." *OMI Holdings, Inc.,* 149 F.3d at 1097. (Citation and internal quotation omitted.)

¶ 33 Facts courts have relied on to determine whether the exercise of jurisdiction interferes with sovereignty include whether the foreign nation's law governs the dispute, and whether the foreign nation's citizen chose to conduct business with a forum resident. *Id.* at 1098. JLT does not contend that foreign law governs the dispute, and there is no agreement designating the law of the United Kingdom as the governing law.[16] Furthermore, JLT chose to conduct business with an Oklahoma resident. Therefore, haling JLT into an Oklahoma court after it purposefully availed itself of the privilege of conducting activities within this state, and for a controversy arising out of, or relating to, those activities, would not interfere with the United Kingdom's sovereignty.

¶ 34 By its conduct, JLT "had a fair warning that its activities might subject it to Oklahoma's jurisdiction." *Ferrell v. Prairie International Trucks, Inc.,* 1997 OK 6, ¶ 12, 935 P.2d 286, 288. Thus, the exercise of personal jurisdiction over JLT comports with fair play and substantial justice.

### CONCLUSION

¶ 35 For the reasons set forth, we find that the trial court erred in dismissing the suit against JLT for lack of personal jurisdiction.

¶ 36 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

WISEMAN, V.C.J., and GOODMAN, J., concur.

---

16. *See, e.g., Federal Deposit Insurance Corporation v. British–American Insurance Company,* *Limited,* 828 F.2d 1439 (9th Cir.1987).