2006 OK 58

Gary GILBERT, as Guardian for John E. Gilbert, an incapacitated person, Appellee,

v.

SECURITY FINANCE CORPORATION OF OKLAHOMA, INC.; Maverick Acquisition Corporation; Maci Holdings, Inc.; Security Finance Corporation of Spartanburg; Security Group, Inc.; and Continental Holding Company, Appellants.

Nos. 101,664, 101,665.

Supreme Court of Oklahoma.

July 5, 2006.

Rehearing Denied Feb. 12, 2007.

Fred A. Leibrock, Byrona J. Maule, Catherine L. Campbell, Phillips McFall McCaffrey McVay & Murrah, P.C., Oklahoma City,

OK, for Appellants Security Finance Corporation of Oklahoma, Inc. and Maverick Acquisition Corporation.

John R. Woodard, III, Curtis J. Roberts, Belinda E. Aguilar, Feldman, Franden, Woodard, Farris & Boudreaux, Tulsa, OK, for Appellants MACI Holdings, Inc., Security Finance Corporation of Spartanburg, Security Group, Inc., and Continental Holding Company.

David Humphreys, Luke J. Wallace, Adrienne N. Cash, Humphreys Wallace Humphreys, P.C., Tulsa, OK, for Appellee.

TAYLOR, J.

## I. ISSUES

¶ 1 The principal issues before this Court are: (1) whether the exercise of *in personam* jurisdiction over the non-resident defendants violates due process, (2) whether the trial court erred in submitting to the jury and instructing the jury on the issue of alter-ego liability, (3) whether title 23, section 9.1 of the Oklahoma Statutes is unconstitutional, and (4) if not, whether the punitive damages award complies with title 23, section 9.1 under the evidence in this case.[1] We find that *in personam* jurisdiction over three of the four non-resident defendants violates due process. We also find that the trial court did not err in submitting to the jury and instructing it on the issue of alter-ego liability as to the other non-resident defendant. We hold that the provisions of title 23, section 9.1(A), (C), and (E) are facially constitutional. We find that the punitive damages award

was excessive under title 23, section 9.1 based on the evidence presented in this case.

## II. STANDARD OF REVIEW

■■■ ¶ 2 *In personam* jurisdiction is a question of law subject to *de novo* review.[2] The court's jurisdiction must affirmatively appear on the record.[3] The issues of a statute's constitutional validity and of its construction and application are questions of law reviewed *de novo*.[4] We review assigned errors in jury instructions to consider whether the instructions in their entirety accurately reflect the law and whether it is reasonably evident that the jury was mislead by an erroneous instruction.[5]

## III. THE DEFENDANTS

¶ 3 Security Finance Corporation of Oklahoma, Inc. (SFC–OK) and Maverick Acquisition Corporation (Maverick) (together Oklahoma defendants) are supervised installment loan companies who make consumer loans of up to $1,000.00 in Oklahoma. The Oklahoma defendants agreed to be held liable for each other's acts. SFC–OK is a wholly-owned subsidiary of Finance Corporation of Spartanburg (SFC–S), a South Carolina company. Security Group, Inc. (SGI), is a stock holding company[6] incorporated under the laws of South Carolina and holds all of SFC–S' stock.

¶ 4 Maverick is a wholly-owned subsidiary of MACI Holdings, Inc. (MACI) which is a wholly-owned subsidiary of Continental Holding Company (CHC). Susan Bridges owns all of CHC's stock. MACI, CHC, and SGI (holding companies), together with SFC–S, are known as the Spartanburg defendants.[7] None of the Spartanburg defen-

---

1. The defendants raise issues in their petitions in error and briefs which are not supported by argument and relevant authority. Thus, these issues are deemed abandoned. *Wofford v. Eastern State Hosp.*, 1990 OK 77, n. 1, 795 P.2d 516, 518, n. 1.

2. *Conoco Inc. v. Agrico Chemical Co.*, 2004 OK 83, ¶ 9, 115 P.3d 829, 833.

3. *Conoco Inc.*, 2004 OK 83, ¶ 20, 115 P.3d at 835.

4. *Cooper Indus., Inc. v. Leatherman Tool Group*, 532 U.S. 424, 431, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001); *Samman v. Multiple Injury Trust Fund*, 2001 OK 71, ¶ 8, 33 P.3d 302, 305.

5. *Myers v. Mo. Pacific R.R. Co.*, 2002 OK 60, ¶ 29, 52 P.3d 1014, 1029; *Cimarron Feeders, Inc.*

*v. Tri–County Elec. Coop., Inc.*, 1991 OK 104, ¶ 5, 818 P.2d 901, 902.

6. "A holding company, as the name indicates, is organized for the purpose of owning and holding the stock of other corporations." 5 Seymour D. Thompson & Joseph W. Thompson, *Commentaries on the Law of Corporations*, § 4098 (Edward F. White ed., 3rd ed.1927).

7. The corporate structure is illustrated by the following chart:

| CHC | SGI |
|-----|-----|
| ↓ | ↓ |
| MACI | SFC-S |
| ↓ | ↓ |
| Maverick | SFC-OK |

dants are licensed to do business in Oklahoma.

¶ 5 SFC–S had a written "Management Agreement" with CHC for SFC–S to supervise Maverick's offices. The agreement was effective during the time period relevant to this case. The agreement gave SFC–S control of Maverick employees including the rights to hire, to discharge, to train, and to completely control and direct their activities. SFC–S and SFC–OK had a similar unwritten agreement.

## IV. FACTS

¶ 6 Gary Gilbert (plaintiff) is the guardian and brother of John E. Gilbert. Between 1997 and 2001, John Gilbert regularly borrowed money from the Oklahoma defendants. During this time, John was not under a guardianship, most of this time he lived independently in an apartment, and his only income was a monthly social security disability check of $500.00 to $600.00. John cannot read, acts as though he can, and is noticeably mildly mentally retarded.

¶ 7 The Oklahoma defendants make new installment loans, renewal loans, and former borrower loans. To increase their profits, the Oklahoma defendants encouraged their customers to renew their loans every two months. Renewals comprised a significant part of the defendants' income. The Oklahoma defendants' policy was for employees to tell their customers the benefits of renewing loans without telling them the costs associated with the renewal. Then before the customer signed the loan agreement, an employee reviewed the loan renewal terms, including the costs and interest. The defendants referred to this as selling the renewal. At times a customer would request a renewal without an employee's "selling it."

¶ 8 Sometimes the Oklahoma defendants encouraged John to renew a loan; at other times, John would ask to renew. The Oklahoma defendants renewed John's loans thirty-seven times. The Oklahoma defendants continued to renew John's loans after they knew that he was staying at least part of the time in a homeless shelter.

¶ 9 SFC–OK has about 70 branch offices in Oklahoma; Maverick has about 30 branch offices. Generally, the branch offices are staffed by a manager and two assistant managers. Supervisors are above the branch managers on the organizational charts. A supervisor's job duties include: (1) overseeing seven to twelve branch offices, (2) hiring, firing, and developing branch employees, (3) overseeing the branch offices' finances, assets, and overall production, (4) visiting each of their branch offices at least every forty-five days, (5) ensuring account gain and loan volume for their territory, and (6) ensuring compliance with company policies and procedures. When visiting a branch office, a supervisor generally will complete a supervision form which is used to assure that employees follow the policy manual.

¶ 10 About fifteen supervisors work in Oklahoma. At least some of the supervisors' employment contracts are with SFC–S. However, the Oklahoma defendants urge that the contracts mislabel SFC–S as the employer. Supervisors receive a percentage of the profits generated by the branches they manage.

¶ 11 SFC–S provides the costs of immediate supervision of the Oklahoma defendants by paying for the expenses of the supervisors; of Lisa Burroughs, the Vice–President of Operations for SFC–OK; and of other Oklahoma defendants' officers. Lisa Burroughs helped set the yearly objectives for the Oklahoma defendants' offices. SFC–S has a sign on the side of its home office building in Spartanburg that states "Security Finance, 500 offices to serve you." When the branch employees and documents refer to the "home office," they are referring to the office in Spartanburg. One of the supervisors admitted that SFC–OK and SFC–S are the same company.

¶ 12 SFC–S owns the policy manual used by the Oklahoma defendants and provides training for the Oklahoma defendants' branch employees. In 2001, the Oklahoma

defendants paid SFC–S over three million dollars for the expenses of supervision. SFC–S regularly swept the money out of both SFC–OK's and Maverick's accounts and commingled it in SFC–S' account with funds from other states. Marshall Walsh, general counsel for the Spartanburg defendants and the Oklahoma defendants, executed an affidavit stating that several officers and employees of SFC–S work in Oklahoma.

## V. PROCEDURAL HISTORY

¶ 13 On February 11, 2002, the plaintiff filed this action against the Oklahoma defendants and later added the Spartanburg defendants. The plaintiff asserted, among other things: (1) fraud, deceit, and misrepresentation, (2) breach of fiduciary duty, and (3) breach of implied covenant of good faith and fair dealing. The jury found for the plaintiff on each of these three claims. It awarded the plaintiff $15,000.00 in actual damages and found that the defendants acted intentionally and with malice. After a separate evidentiary proceeding on the amount of punitive damages issue, the jury awarded the plaintiff $1,750,000.00 in punitive damages.

¶ 14 Below and here, the Spartanburg defendants have continually asserted that they should be dismissed for lack of *in personam* jurisdiction. The trial court consistently denied the Spartanburg defendants' motions as to *in personam* jurisdiction. The jury returned a verdict against the Spartanburg defendants based on alter-ego liability. On December 17, 2004, the trial court entered judgment on the verdict. The Oklahoma defendants and the Spartanburg defendants filed separate appeals, which this Court consolidated.

¶ 15 The plaintiff filed a post-judgment "Omnibus Application for Attorney Fees" asking that sanctions be imposed and also filed a post-judgment application to tax costs. The plaintiff's pre-trial motion asking for sanctions based on discovery abuses was still pending. By orders dated April 7, 2005, September 27, 2005, and January 30, 2006, the trial court sanctioned both the Spartanburg defendants and the Oklahoma defendants and awarded the plaintiff taxable costs.

## VI. *IN PERSONAM* JURISDICTION

¶ 16 We first address the trial court's exercise of *in personam* jurisdiction over the Spartanburg defendants. *In personam* jurisdiction, the power of the court to render a binding judgment against a defendant,[8] depends on reasonable notice and "a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum."[9] Oklahoma's "long-arm statute is to extend the jurisdiction of the Oklahoma courts to the outer limits permitted by the Oklahoma Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution."[10] Therefore, our inquiry is whether this state courts' exercise of *in personam* jurisdiction over the Spartanburg defendants comports with due process. Due process is satisfied if a non-resident defendant has "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "[11] "The defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there."[12]

¶ 17 Whether a court exercises general or specific *in personam* jurisdiction depends on the nature and quality of the defendant's contacts.[13] A forum exercises

8. *Conoco Inc.,* 2004 OK 83, ¶ 16, 115 P.3d at 834.

9. *Kulko v. Superior Court of California,* 436 U.S. 84, 91, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

10. *Conoco Inc.,* 2004 OK 83 at ¶ 17, 115 P.3d at 834; 12 O.S.2001, § 2004(F).

11. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (quoting *International Shoe Co. v.*

*Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

12. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

13. *Helicopteros Nacionales,* 466 U.S. at 414 n. 8, 104 S.Ct. 1868.

"specific jurisdiction" when "the controversy is related to or 'arises out of' the defendant's contacts with the forum."[14] The "relationship among the defendant, the forum, and the litigation" is essential for the exercise of specific personal jurisdiction.[15] One act of substantial quality may satisfy the minimum contacts test for purposes of specific jurisdiction.[16]

¶ 18 A forum exercises "general jurisdiction" when the controversy is unrelated to the defendant's contacts with the forum.[17] General jurisdiction exists when a defendant has maintained substantial and systemic contacts with a forum.[18] Random, fortuitous, or attenuated contacts generally do not rise to the minimum level necessary for the exercise of general jurisdiction.[19]

¶ 19 The plaintiff asserts that both general and specific jurisdiction of the Spartanburg defendants is proper from their own activities and derivatively through the contacts of the Oklahoma defendants under the theory of alter-ego liability. Under this theory, personal jurisdiction over a parent corporation may be based on the activities of its in-state subsidiary.[20] In order to establish jurisdiction under the alter-ego theory, there must be proof of pervasive control by the parent over the subsidiary more than what is ordinarily exercised by a parent corporation.[21] A plaintiff must overcome by "clear evidence" the presumption that a parent and subsidiary are separate and distinct entities.[22]

¶ 20 Addressing only the holding companies, the evidence is that they held Oklahoma defendants' stock, they had some board of directors in common with the Oklahoma defendants, they filed consolidated income tax returns, and CHC signed the management agreement with SFC–S. There is no evidence that the holding companies have any direct contacts with Oklahoma or that they exercise more control over the Oklahoma defendants than that generally exercised by a parent company.[23] The record fails to show the "minimum contacts" necessary for the exercise of in personam jurisdiction over the holding companies,[24] and the holding companies never surrendered to the trial court's in personam jurisdiction. Our finding of a lack of "minimum contacts" is based on the specific facts in this case. On remand, the trial court is instructed to dismiss the holding companies as parties in this action.

¶ 21 The same is not true for SFC–S. The evidence shows SFC–S was physically in Oklahoma through its employees' continuous, systemic contacts. SFC–S exercised significant day-to-day control over the Oklahoma defendants through the supervisors. The claims in the case are based, at least in part, on the renewal policies set out in SFC–S' manual and enforced by SFC–S' employees in Oklahoma. SFC–S' contacts with Oklahoma surpassed the minimum necessary for the exercise of in personam jurisdiction,

14. *Id.*; *Epps*, 327 F.3d at 648; *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir.1988).

15. *Helicopteros Nacionales*, 466 U.S. at 414, 104 S.Ct. 1868 (citing *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)).

16. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 n. 18, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

17. *Id.* at n. 9; *Rambo*, 839 F.2d at 1418.

18. See *Helicopteros Nacionales*, 466 U.S. at 415–416, 104 S.Ct. 1868.

19. *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174.

20. *Epps*, 327 F.3d at 648–649.

21. *Kelly v. Syria Shell Petroleum Development*, 213 F.3d 841, 856 (5th Cir.2000); see *Purdue Research Foundation v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 788 n. 17 (7th Cir.2003).

22. *Kelly*, 213 F.3d at 856 (quoting *Dickson Marine, Inc., v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir.1999)).

23. The plaintiff relies on consolidated tax returns for support of his argument that the holding companies exercised extensive control over the Oklahoma defendants. The consolidated tax returns are allowed by the Internal Revenue Service, *see* I.R.C. §§ 1501, 1504, and are only of minimal value to show control.

24. See *Helicopteros Nacionales*, 466 U.S. at 415–420, 104 S.Ct. 1868.

both general and specific.[25]

## VII. ALTER–EGO LIABILITY

¶ 22 SFC–S argues that the trial court erred in submitting the issue of alter-ego liability to the jury. Corporations are distinct legal entities, and generally one corporation will not be held responsible for the acts of another.[26] One corporation may be held liable for the acts of another under the theory of alter-ego liability if (1) the separate existence is a design or scheme to perpetuate a fraud, or (2) one corporation is merely an instrumentality or agent of the other.[27] If the Oklahoma defendants were mere instrumentalities or agents of SFC–S, the legal distinction between these corporations may be disregarded, and they may be treated as one entity for purposes of liability.[28]

¶ 23 The factors for determining if one corporation may be held liable for the acts of another hinge primarily on control.[29] They include: (1) whether the dominant corporation owns or subscribes to all the subservient corporation's stock, (2) whether the dominant and subservient corporations have common directors and officers, (3) whether the dominant corporation provides financing to the subservient corporation, (4) whether the subservient corporation is grossly undercapitalized, (5) whether the dominant corporation pays the salaries, expenses or losses of the subservient corporation, (6) whether most of the subservient corporation's business is with the dominant corporation or the subservient corporation's assets were conveyed from the dominant corporation, (7) whether the dominant corporation refers to the subservient corporation as a division or department, (8) whether the subservient corporation's officers or directors follow the dominant corporation's directions, and (9) whether the corporations observe the legal formalities for keeping the entities separate.[30]

¶ 24 The record is replete with evidence from which a jury could find that SFC–S exercised the control over the Oklahoma defendants necessary to impose derivative liability. SFC–S owns all of SFC–OK's stock. In addition to Susan Bridges' membership on the board of directors, the companies have other directors in common. Kent Younce, an employee of SFC–S, is a director and vice-president of SFC–OK and the executive director of Maverick. Ray Biggs is the President of SFC–S and of SFC–OK. There is evidence that SFC–OK and Maverick are undercapitalized. There is evidence that SFC–S holds the Oklahoma defendants out as part of its corporation. From the evidence, a jury could reasonably find that the Oklahoma defendants were controlled by SFC–S, acting through the supervisors, such that SFC–S could be held liable for their acts. A trial court is justified in removing a question from the jury when only one inference can be drawn from competent evidence.[31] It was not error for the trial court to submit the alter-ego liability issue to the jury and to instruct the jury on alter-ego liability.

¶ 25 As a collorary, SFC–S argues that the trial court erred by refusing its proposed instruction on "sham corporations," by failing to give separate instructions for each of the Spartanburg defendants on alter-ego liability, and by failing to give an instruction on undercapitalization. We find the argument to be without merit. The court instructed: "Whether or not one corporation is the mere instrumentality or agent of another hinges primarily on control. This determination must be made separately as to each Spartanburg defendant. Separate verdict

25. *See id.*

26. *Sautbine v. Keller,* 1966 OK 209, ¶ 0, 423 P.2d 447, 449 (Syllabus 2 by the court); *Gibson Products Co., Inc. of Tulsa v. Murphy,* 1940 OK 100, ¶ 36, 100 P.2d 453, 458.

27. *Gibson Products Co., Inc.,* 1940 OK at ¶ 36, 100 P.2d at 458.

28. *Oliver v. Farmers Ins. Group of Cos.,* 1997 OK 71, ¶ 8, 941 P.2d 985, 987.

29. *Id.*

30. *Id.; Frazier v. Bryan Mem'l Hosp. Auth.,* 1989 OK 73, ¶ 17, 775 P.2d 281, 288.

31. *Badillo v. Mid Century Ins. Co.,* 2005 OK 48, ¶ 55, 121 P.3d 1080, 1102.

forms are provided to assist you in this determination." In the instruction on alter-ego liability, the trial court specifically listed as a consideration whether "the subordinate corporation [was] grossly undercapitalized." It is the duty of the trial court to instruct on the applicable law under the evidence.[32] The trial court accurately instructed the jury on alter-ego liability. SFC–S presents no reversible error in the instructions.

## VIII. PUNITIVE DAMAGES

¶ 26 The issues on which the Oklahoma defendants seek relief from the punitive damages award are: (1) the trial court erred by failing to find and by refusing to instruct that punitive damages could not be based on legal conduct, (2) title 23, section 9.1, the statutory basis for the punitive damages award, is unconstitutional under *BMW of North America, Inc. v. Gore*[33] and *State Farm Automobile Ins. Co. v. Campbell,*[34] (3) the trial court misapplied title 23, section 9.1, and (4) the trial court erred in its instruction on punitive damages.[35]

¶ 27 Oklahoma defendants submit that because their conduct was lawful in Oklahoma based on the Oklahoma Uniform Consumer Credit Code (UCCC)[36] and the applicable federal law, the conduct cannot support an award of punitive damages. Plaintiff asserted that Oklahoma defendants

did a legal act in an illegal manner. The UCCC recognizes that acts, although otherwise legal, may be done in a fraudulent or unconscionable manner.[37] Punitive damages may be based on fraudulent or unconscionable conduct if done intentionally and with malice.[38] Under the evidence, the trial court did not err in refusing to instruct the jury that punitive damages could not be based on legal conduct.

### A. Constitutional validity of title 23, section 9.1

¶ 28 The Oklahoma defendants argue that title 23, section 9.1 of the Oklahoma Statutes is unconstitutional. Section 9.1 provides factors a jury is to consider in awarding punitive damages and limits the amount, among other things. Only subsections A, C, and E of title 23, section 9.1, are implicated here.[39]

¶ 29 The Oklahoma defendants rely on *Gore*[40] and *Campbell,*[41] in which the United States Supreme Court reviewed punitive damages awards for compliance with due process. Review of a jury's award under a due process analysis and review of legislation are significantly different.[42] The United States Supreme Court has not reviewed for constitutional validity a punitive damages statute like Oklahoma's which significantly bridles jury discretion.[43] For the first time, we address title 23, section 9.1's validity un-

---

32. *Cimarron Feeders,* 1991 OK 104, at ¶ 16, 818 P.2d at 903.

33. 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

34. 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

35. We reject plaintiff's argument that the Oklahoma defendants invited a large punitive damages award by telling the jury in closing argument in the punitive damages stage that it would have some discretion in determining the amount of punitive damages.

36. 14A O.S.2001, §§ 1–101 to 9–101.

37. 14A O.S.2001, § 6–111(1).

38. 23 O.S.Supp.2002, § 9.1.

39. We need not address the constitutionality of all subsections of section 9.1 because 23

O.S.Supp.2002, § 9.1(F) provides the provisions are severable.

40. 517 U.S. at 559, 116 S.Ct. 1589.

41. 538 U.S. at 408, 123 S.Ct. 1513.

42. *TXO Prod. Corp. v. Alliance Res. Corp.,* 509 U.S. 443, 456, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993).

43. The United States Supreme Court most recently addressed punitive damages, including the process for reviewing them, in *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991); *TXO,* 509 U.S. at 443, 113 S.Ct. 2711; *Honda Motor Co., v. Oberg,* 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994); *Gore,* 517 U.S. at 559, 116 S.Ct. 1589; *Cooper Indus.,* 532 U.S. at 424, 121 S.Ct. 1678; *Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

der the Fourteenth Amendment Due Process Clause.[44]

¶ 30 The Due Process Clause of the Fourteenth Amendment imposes substantive and procedural limitations on punitive damages awards.[45] The Due Process Clause prohibits punitive damages awards which are "grossly excessive" in relation to a state's legitimate interests in punishment and deterrence.[46] Governed by this constitutional limitation, the states "have considerable flexibility in determining the level of punitive damages that they will allow in different classes of cases and in any particular case." [47]

¶ 31 Legislation such as title 23, section 9.1 is tested under the rational-basis standard unless it draws upon an inherently suspect classification or infringes upon a fundamental right.[48] Legislation challenged as violating a fundamental right must be strictly scrutinized.[49] We read the Oklahoma defendants' briefs as contending that they have a fundamental right to have a jury instructed on factors just as they are enumerated in Gore[50] and Campbell[51] and to have title 23, section 9.1 incorporate judicial review of the jury award.

¶ 32 The Oklahoma defendants posit that title 23, subsection 9.1(A) is unconstitutional because the factors a jury is to consider do not track those articulated in Gore and Campbell. Gore and Campbell teach that a court is to consider certain factors when reviewing a jury award, but they do not require that a jury be instructed on each individual factor.[52] Both Gore[53] and Campbell[54] looked at the overall process—not only the jury's discretion, but also the judicial review of the award.

¶ 33 In Pacific Mutual Life Ins. Co. v. Haslip,[55] the United States Supreme Court upheld a punitive damages award against a due process attack. The Court reviewed the states' traditional common-law approach of assessing punitive damages. Under this approach, the jury determines the amount of punitive damages based on the gravity of the wrong and on a state's need to deter similar wrongful conduct and then the court reviews the award for reasonableness.[56] The Court found that this approach was not "so inherently unfair so as to deny due process and be per se unconstitutional." [57] Under Haslip for purposes of due process, the jury need only be "instructed to consider the gravity of the wrong and the need to deter similar wrongful conduct." [58] The Court stated: "As long as the [jury's] discretion is exercised within reasonable constraints, due process is satisfied." [59] That said, the factors to be considered under section 9.1 cannot conflict with those articulated by the United States Supreme Court.

---

44. In Haslip, 499 U.S. at 1, 111 S.Ct. 1032, the United States Supreme Court addressed Alabama's procedures for awarding and reviewing a punitive damages award. After Haslip was decided, this Court in Rodebush v. Okla. Nursing Homes, Ltd., 1993 OK 160, 867 P.2d 1241, and the Tenth Circuit Court of Appeals in Capstick v. Allstate Ins. Co., 998 F.2d 810 (10th Cir.1993), upheld 23 O.S.1991, § 9 against a due process challenge. Section 9, the predecessor to section 9.1, placed fewer limits on a jury's discretion than does section 9.1.

45. Campbell, 538 U.S. at 416, 123 S.Ct. 1513.

46. Gore, 517 U.S. at 568, 116 S.Ct. 1589.

47. Id.

48. City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

49. Reno v. Flores, 507 U.S. 292, 301–302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

50. 517 U.S. at 576–577, 116 S.Ct. 1589.

51. 538 U.S. at 419, 123 S.Ct. 1513.

52. Campbell, 538 U.S. at 419, 123 S.Ct. 1513 ("We have instructed courts to determine the reprehensibility of a defendant by considering the following factors.").

53. 517 U.S. at 559, 116 S.Ct. 1589.

54. 538 U.S. at 408, 123 S.Ct. 1513.

55. 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1.

56. Id. at 15, 111 S.Ct. 1032.

57. Id. at 17, 111 S.Ct. 1032.

58. Id. at 15, 111 S.Ct. 1032.

59. Id. at 20, 111 S.Ct. 1032.

¶ 34 Subsection 9.1(E) [60] requires a jury to consider the following factors, which are set out in subsection 9.1(A), when assessing punitive damages:

1. The seriousness of the hazard to the public arising from the defendant's misconduct;

2. The profitability of the misconduct to the defendant;

3. The duration of the misconduct and any concealment of it;

4. The degree of the defendant's awareness of the hazard and of its excessiveness;

5. The attitude and conduct of the defendant upon discovery of the misconduct or hazard;

6. In the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and

7. The financial condition of the defendant.[61]

All of these factors relate to Oklahoma's legitimate interests in punishment and deterrence.[62]

¶ 35 Judicial review of the size of the punitive damages awards safeguards against excessive verdicts.[63] *Gore* instructed that courts reviewing a punitive damages award must consider three guideposts: (1) the level of reprehensibility of the defendant's misconduct; (2) the ratio of punitive damages awarded to the actual damages awarded; and (3) the comparison of the punitive damages awarded and the civil penalties authorized.[64]

¶ 36 *Campbell*, citing *Gore*, sets out seven factors relating to reprehensibility: "the harm caused was physical as opposed to economic; the tortious conduct evinced an indif-

ference to or a reckless disregard of the health or safety of others; the target of the conduct was financially vulnerable; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." [65] The section 9.1 factors do not run afoul of *Gore* and *Campbell* as the Oklahoma defendants argue: rather they are related to the *Campbell* factors, to the *Gore* guideposts, and to the state's interests in punishment and deterrence.

¶ 37 The Oklahoma defendants argue that section 9.1(C) prohibits consideration of factors other than those listed in subsection A and places a cap on the award. Subsection (C) provides: "Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error." If a statute is unambiguous and does not conflict with another enactment, we apply its plain language.[66] By its own unambiguous terms, this provision applies only to subsection (C).

¶ 38 The procedure for an award under subsection (C) must be followed: there must be a jury finding by "clear and convincing evidence" that the "defendant acted intentionally and with malice towards others," there must be a separate jury proceeding on the punitive damages amount, the punitive damages amount must fall within the statutory limits, and the trial court must reduce the jury award by any amount previously paid as a result of all punitive damages verdicts in Oklahoma for the same conduct.[67] Otherwise, the award is void.[68] This provision of subsection 9.1(C) does not affect subsection 9.1(A) factors nor does it prevent a reviewing court from considering additional factors.

**60.** 23 O.S.Supp.2002, § 9.1(E) provides: "In determining the amount, if any, of punitive damages to be awarded under either subsection B, C or D of this section, the jury shall make the award based upon the factors set forth in subsection A of this section."

**61.** 23 O.S.Supp.2002, § 9.1(A).

**62.** *See Gore*, 517 U.S. at 568, 116 S.Ct. 1589.

**63.** *Honda Motor Co.*, 512 U.S. at 421, 114 S.Ct. 2331.

**64.** *Id.* at 575, 116 S.Ct. 1589; *Campbell*, 538 U.S. at 418, 123 S.Ct. 1513.

**65.** *Campbell*, 538 U.S. at 419, 123 S.Ct. 1513.

**66.** *George E. Failing Co. v. Watkins*, 2000 OK 76, ¶ 7, 14 P.3d 52, 56.

**67.** 23 O.S.Supp.2002, § 9.1(C).

**68.** *Id.*

We cannot agree with Oklahoma defendants' proposed construction of title 23, section 9.1(C).

¶ 39 The Oklahoma defendants argue that subsection 9.1(C)(1)(c)'s provision allowing a punitive damages award to disgorge defendant's financial gain directly resulting from "the conduct causing the injury to the plaintiff or other persons or entities" also runs afoul of *Campbell*. Under section 9.1(C)(1)(c)'s plain language, the conduct that caused harm to others must be the same as the conduct that harmed the plaintiff. With the proper limiting instruction, *Campbell* allows the jury to consider evidence of out-of-state conduct in determining a defendant's "deliberateness and culpability" and of in-state conduct in punishing a defendant if the conduct has "a nexus to the specific harm suffered by the plaintiff." [69]

¶ 40 The Court in *TXO Production Corp. v. Alliance Resources Corp.*[70] stated: "It is appropriate to consider the magnitude of the *potential harm* that the defendant's conduct would have caused to its intended victim if the wrongful plan had succeeded, as well as the possible harm to other victims that might have resulted if similar future behavior were not deterred." If potential harm to other victims is a consideration, then *actual* harm to others is also an appropriate consideration. This is especially true here where Oklahoma mitigates the risk of multiple punitive damages awards by allowing a reduction by the amount paid for other punitive damages awards in Oklahoma for the same conduct.[71]

¶ 41 The Oklahoma defendants also argue that the $500,000.00 limit is unconstitutional because it is not expressed as a multiplier of actual damages and, thus, allows

punitive damages awards which are excessive in relation to the actual damages award. The jury can award no more than $500,000.00 under subsection 9.1(C)(1)(a). However, they may award less or nothing at all. It is the reviewing court's duty to assure that a punitive damages award is not unconstitutionally excessive.[72]

¶ 42 The United States Supreme Court has tacitly approved of a legislatively imposed dollar cap on punitive damages.[73] In *Cooper*, the Court recognized that several states have passed statutes which place limits on punitive damages.[74] Many of these limits are expressed in dollar amounts.[75] In addressing these limits, the Court recognized that "legislatures enjoy broad discretion in authorizing and limiting permissible punitive damages awards." [76] Additionally, the Court has refused to impose a bright-line ratio test for punitive damages awards.[77] Any bright-line ratio imposed on a punitive damages award is thus a matter of public policy for the state legislatures and is not imposed by *Campbell*.

¶ 43 Lastly, the Oklahoma defendants attack section 9.1 as unconstitutional because it fails to provide for judicial review. First, we note that section 9.1 is directed at the jury, not the reviewing court. Trial court review of a jury verdict is provided by title 12, section 651(6) of the Oklahoma Statutes. Section 651(6) allows the trial court to grant a new trial if the verdict is contrary to law. A party aggrieved by a trial court judgment or final order has a right to appeal the decision under title 12, section 990A, and if the petition in error is properly filed, a right to appellate review.[78]

¶ 44 We do not agree that the onus is on the jury to apply the Due Process Clause to the punitive damages award to

---

**69.** *Campbell*, 538 U.S. at 422–423, 123 S.Ct. 1513.

**70.** 509 U.S. at 460, 113 S.Ct. 2711.

**71.** 23 O.S.Supp.2002, § 9.1(C); *Campbell*, 538 U.S. at 423, 123 S.Ct. 1513.

**72.** *Campbell*, 538 U.S. at 418, 123 S.Ct. 1513.

**73.** *Cooper*, 532 U.S. at 433, 121 S.Ct. 1678.

**74.** *Id.*

**75.** *See Gore*, 517 U.S. at 615–616, 116 S.Ct. 1589 (Ginsburg, J., dissenting).

**76.** *Cooper*, 532 U.S. at 433, 121 S.Ct. 1678.

**77.** *Campbell*, 538 U.S. at 425, 123 S.Ct. 1513.

**78.** 12 O.S.2001, § 952; 20 O.S.2001, §§ 30.1, 3001.1; *see Honda Motor Co.*, 512 U.S. at 426, 114 S.Ct. 2331.

determine if the award was unconstitutionally excessive. That burden lies with the trial court and the appellate courts.[79] The jury has only the burden of determining an amount of punitive damages based on Oklahoma's statutory requirements and interests.[80]

¶ 45 The Oklahoma defendants have failed to articulate a right which would require heightened scrutiny of title 23, subsections 9.1(A), (C), and (E). Therefore, we review these provisions under the rational-basis standard. It is uncontested that section 9.1 is rationally related to Oklahoma's goal of authorizing punitive damages "for the sake of example and by way of punishing" a defendant's conduct subject to the provisions and limitations set out in the statute.[81]

¶ 46 Title 23, section 9.1 provides far more restraints on jury discretion than required by the Due Process Clause of the Fourteenth Amendment. Oklahoma appellate courts review punitive damages awards to determine whether an award is reasonably related to the defendant's conduct and related to the cause and extent of the injuries.[82] This Court has not hesitated to reverse a punitive award when it is "excessive as a result of the 'passion, prejudice, or improper sympathy' of the jury."[83] Our review of a punitive damages award for excessiveness

certainly meets the review required under the Due Process Clause.[84]

¶ 47 In summary, the Due Process Clause does not require jury instructions state specifically the United States Supreme Court's reprehensibility factors for assessing punitive damages.[85] The Court has on more than one occasion approved the method of assessing punitive damages wherein the jury is "instructed to consider the gravity of the wrong and the need to deter similar wrongful conduct."[86] Pursuant to Oklahoma's statutory mandate,[87] juries in Oklahoma, including the jury in this case, are given much more guidance in awarding punitive damages than required by due process. After the jury makes its punitive damages award, it falls to the court to determine if the award is "grossly excessive" as it relates to Oklahoma's interest in punishing misconduct and deterring similar misconduct.[88] Accordingly, we hold that the provisions of title 23, section 9.1(A), (C), and (E) are facially valid under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[89]

### B. Punitive damages award

¶ 48 Before examining the punitive damages award for constitutional infirmity, we must determine whether it conforms to title 23, section 9.1.[90] In addition to delineating

79. See *Cooper*, 532 U.S. at 433–436, 121 S.Ct. 1678; *Rodebush*, 1993 OK 160 at ¶ 36, 867 P.2d at 1251 (upholding 23 O.S.2001, § 9 against a constitutional attack).

80. *Cooper*, 532 U.S. at 433, 121 S.Ct. 1678.

81. In fashioning title 23, section 9.1, the Oklahoma Legislature adopted many of the safeguards and guidelines suggested in Justice O'Connor's dissent in *Haslip*, 499 U.S. at 51, 58, 111 S.Ct. 1032 (O'Connor, J., dissenting), such as bifurcated proceedings. Title 23, section 9.1 provides a defendant with clear notice of "the conduct that will subject him to punishment [and] of the severity of the penalty that a State may impose." *Campbell*, 538 U.S. at 417, 123 S.Ct. 1513.

82. *Rodebush*, 1993 OK 160 at ¶ 36, 867 P.2d at 1251.

83. *Id.* (quoting *Chandler v. Denton*, 1987 OK 38, ¶ 29, 741 P.2d 855, 867–868).

84. See *Haslip*, 499 U.S. at 15, 17, 111 S.Ct. 1032.

85. *Id.* at 17, 20, 111 S.Ct. 1032.

86. *Id.* at 15, 111 S.Ct. 1032.

87. 23 O.S.Supp.2002, § 9.1.

88. *Cooper*, 532 U.S. at 436, 121 S.Ct. 1678; *Gore*, 517 U.S. at 568, 116 S.Ct. 1589.

89. The due process issue has been analyzed based on federal constitutional guarantees. Nevertheless, it has long been recognized that the due process protections encompassed within the Oklahoma Constitution and its federal counterpart are coextensive. *Barzellone v. Presley*, 2005 OK 86, ¶ 15, 126 P.3d 588, 593; *Presley v. Bd. of County Comm'rs*, 1999 OK 45, ¶ 8, 981 P.2d 309, 312; see *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201.

90. *State ex rel. Fent v. State ex rel. Okla. Water Res. Bd.*, 2003 OK 29, ¶ 12, 66 P.3d 432, 439.

factors the jury must consider in assessing a punitive damages award,[91] section 9.1 creates three categories of punitive damages awards based on a defendant's culpability.[92] At issue here is the intermediate category, Category II.

¶ 49 Category II procedures utilize a two stage process.[93] If a jury finds a defendant liable on the underlying tort, then it must find clear-and-convincing evidence that "[t]he defendant has acted intentionally and with malice towards others" or that "[a]n insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured."[94] After an award of actual damages, the jury, in a separate proceeding, may award punitive damages in an amount not to exceed the greatest of:

a. Five Hundred Thousand Dollars ($500,000.00),

b. twice the amount of actual damages awarded, or

c. the increased financial benefit derived by the defendant or insurer as a direct result of the conduct causing the injury to the plaintiff and other persons or entities.[95]

The statute requires the trial court to reduce an award made under subparagraph c by other awards previously paid as a result of punitive damage verdicts entered in an Oklahoma court for the same conduct.[96]

 ¶ 50 In this case, the actual damages awarded were $15,000.00, making $30,000.00 the maximum award under subsection 9.1(C)(1)(b). Although the plaintiff presented evidence that the Oklahoma defendants serviced other customers who received public assistance, including social security disability benefits, he failed to present any evidence that any of these customers had vulnerabilities similar to those of John Gilbert. There-

fore, the maximum punitive damages award under subsection (C)(1)(c) is the financial benefit derived by the Oklahoma defendants "as a direct result of the conduct causing" John's injury only. The evidence showed that John received $4,319.43 in cash from the Oklahoma defendants and made payments totaling $6,970.00. Therefore, the maximum punitive damages award under subsection (C)(1)(c) is $2,650.57, the financial benefit that the Oklahoma defendants could have received from their loans to John Gilbert. Thus under title 23, section 9.1(C)(1)(c) and the evidence, the amount of the punitive damages award cannot exceed $500,000.00.

 ¶ 51 The Oklahoma defendants attack the punitive damages instruction. Under title 23, section 9.1(C)(1)(c) and Oklahoma Uniform Jury Instruction number 5.9,[97] the jury has three options for calculating the limit on the amount of the punitive damages award: (1) $500,000.00, (2) twice the actual damages, or (3) the amount the defendants financially benefitted as a direct result of their conduct. The trial court instructed the jury on only two of the options:

In no event should the punitive damages exceed the greater of:

$500,000.00 or the increased financial benefit derived by the Oklahoma defendants as a direct result of the conduct causing the injury to the plaintiff, John Gilbert and other persons.

 ¶ 52 The procedure should have been to follow the uniform instruction and instruct the jury on all three options. In this case, the trial court instructed the jury on only the first and third options. The instruction given the jury misstated the law under the evidence and, in view of the $1,750,000.00 verdict, it appears the jury was misled to believe that the financial benefit to the Okla-

91. 23 O.S.Supp. 2002, § 9.1(A), (E).

92. *Id.* § 9.1(B)-(D).

93. *Id.* § 9.1(C).

94. *Id.* § 9.1(C)(1)-(2).

95. *Id.* § 9.1(C).

96. *Id.*

97. Oklahoma Uniform Jury Instruction number 5.9 provides, in part:

In no event should the punitive damages exceed the greater of ... $500,000.00, or twice the amount of actual damages you have previously awarded, or the increased financial benefit derived by the defendant as a direct result of the conduct causing the injury to the plaintiff and other persons or entities.

homa defendants was more than the $2,650.57 proven at trial and more than the $500,000.00 limit applicable here. We find that the erroneous instruction constituted reversible error.

¶ 53 Because the punitive damages award of $1,750,000.00 is inconsistent with title 23, section 9.1(C) under the evidence in this case and the instruction was erroneous, the punitive damages award is reversed. The amount of punitive damages is a question of fact for the jury; [98] the $1,750,000.00 award of punitive damages is void and reversible error; [99] and, thus, the issue of the amount of punitive damages is remanded for proceedings consistent with this opinion. We need not address whether the $1,750,000.00 punitive damages award is unconstitutionally excessive until a jury awards punitive damages under a proper instruction. Having addressed the principal issues, we consider the remaining issues.

## IX. SANCTIONS

### A. Motion to dismiss Oklahoma defendants' amended petition in error regarding sanctions

¶ 54 After judgment was entered on December 17, 2004, the plaintiff filed its omnibus application for attorney fees on January 11, 2005, asking that he be awarded attorney fees as a sanction. The application for sanctions was based on defendants' discovery abuses and on their assertion of frivolous defenses in bad faith. The plaintiff did not attach any documentation of costs or attorney fees to his application. Instead, he asked that the court make a ruling on his entitlement to sanctions and that the parties be ordered to mediation or that a special master be appointed to hear unresolved issues.

¶ 55 Then on January 12, 2005, the plaintiff filed a separate application for $40,437.69 in costs under title 12, sections 928 and 942. On February 15, 2005, the trial court heard arguments on the plaintiff's application for attorney fees as sanctions and continued the issue of taxable costs. On April 7, 2005, and without any supporting documentation as to amounts, the trial court ordered the four Spartanburg defendants to pay $10,000.00 each in sanctions under title 23, section 103. The Spartanburg defendants timely filed an amended petition in error in the present appeal attacking the trial court's April 7, 2005 order.

¶ 56 On June 3, 2005, the plaintiff filed a supplement to its omnibus application addressing issues relating to the Oklahoma defendants. On July 29, 2005, the trial court again heard arguments on plaintiff's pretrial motion for relief, on plaintiff's omnibus application for attorney fees, and on plaintiff's application to tax costs. On September 27, 2005, the trial court entered an order against the Oklahoma defendants for sanctions in the form of attorney fees in the sum of $40,000.00 jointly and severally. The trial court awarded post-judgment interest from the date of the order. The trial court refused to award any additional monetary sanction against the Spartanburg defendants.

¶ 57 On October 6, 2005, the Oklahoma defendants filed an unopposed motion to amend their petition in error to include the September 27, 2005 order. On October 18, 2005, this Court granted the motion and ordered the amended completion of record to be filed by November 17, 2005.

¶ 58 The Oklahoma defendants filed the amended petition in error on November 7, 2005, more than thirty days after the order from which they were appealing was filed. The plaintiff filed a motion to dismiss the

98. *See Sides v. John Cordes, Inc.,* 1999 OK 36, ¶ 18, 981 P.2d 301, 308.

99. 23 O.S.Supp.2002, § 9.1(C); *see supra* text at ¶ 38. Section 9.1(C) provides in part:

Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.

Under this provision, which the Legislature added in 2002, 2002 Okla. Sess. Laws, p. 1999, c. 462, § 2, a punitive damages award which is awarded in a manner inconsistent with title 23, section 9.1(C) is no longer subject to remittitur but must be remanded for a new trial. This provision does not prohibit the remittitur of a punitive damages award which has been properly awarded under section 9.1(C) but found to be constitutionally excessive.

amended petition in error as untimely under title 12, section 990A(A),[100] as well as under other rules. The Oklahoma defendants then filed a motion asking this Court to either accept the untimely filing of the amended petition in error or grant leave to withdraw the amended petition in error as prematurely filed to be re-filed on entry of a final order.

¶ 59 Plaintiff's omnibus application was an application for sanctions: it was not seeking reimbursement of attorney fees and costs as prevailing party. The September 27, 2005 order determined all the issues raised by plaintiff's omnibus application—the imposition of sanctions and the amount. There were no remaining issues raised by the omnibus application to be determined. Although the taxable costs had yet to be determined, those were raised in a separate application, are statutory, and are unrelated to the application for sanctions or the award imposing sanctions in the form of attorney fees. Therefore, the September 27, 2005 order was a final order.[101]

¶ 60 Title 12, section 990A(A) requires that an appeal from a final order must be commenced within thirty days after it is filed. The appeal of the September 27, 2005 order was commenced more than thirty days after the final order was filed. Timely filing of the petition in error commencing the appeal is jurisdictional, and "[f]ailure to file an appeal within the statutory time is fatal." [102] This Court is without jurisdiction to address the issues raised in the Oklahoma defendants amended petition in error, regarding sanctions, and it is dismissed.

**B. Sanctions against the SFC–S**

¶ 61 We review the imposition of sanctions for abuse of discretion.[103] Based on title 23, section 103, the trial court found the Spartanburg defendants asserted in bad faith both that they were not liable for the Oklahoma defendants' acts and that the court lacked in *personam jurisdiction* over them. Having found the trial court lacked in *personam jurisdiction* over the holding companies, we address the sanctions only as imposed on SFC–S.

¶ 62 Title 23, section 103, allows sanctions to be imposed against the non-prevailing party not to exceed $10,000.00 "for reasonable costs, including attorneys fees, incurred with respect to such claim or defense." The imposition of sanctions imposed pursuant to title 23, section 103 requires: (1) a claim for damages for injury to person or personal rights, (2) adjudication of the claim on the merits, (3) motion for reimbursement of attorney fees and costs made by the prevailing party, and (4) a judicial determination that a non-prevailing party's assertion of a claim or a defense was made "in bad faith, was not well grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." [104] A bad faith claim is strictly limited to a claim made for oppressive reasons.[105]

¶ 63 As part of its judicial determination, the trial court must re-examine the record to determine the merits of the claim or defense and whether it fits within the fourth requirement regardless of the rulings

100. Title 12, section 990A provides, in part:

 A. An appeal to the Supreme Court of Oklahoma, if taken, must be commenced by filing a petition in error with the Clerk of the Supreme Court of Oklahoma within thirty (30) days from the date a judgment, decree, or appealable order prepared in conformance with Section 696.3 of this tile is filed with the clerk of the trial court.

101. *See Hammonds v. Osteopathic Hosp. Founders Ass'n*, 1996 OK 54, ¶ 6, 917 P.2d 6, 8 (prejudgment order imposing sanctions on non-party "is *appealable as final* if it conclusively determines the issue of sanctionability and sets the amount that stands imposed."); *Stubblefield v.*

*Gen. Motors Acceptance Corp.*, 1980 OK 164, ¶ 14, 619 P.2d 620, 623–624 (There may be more than one final, appealable order even though there is but one judgment.).

102. *Stites v. DUIT Construction Co.*, 1995 OK 69, ¶ 25, 903 P.2d 293, 301; *see* 12 O.S.2001, § 990A(A).

103. *Broadwater v. Courtney*, 1991 OK 39, ¶ 6, 809 P.2d 1310, 1312.

104. 23 O.S.2001, § 103.

105. *Beard v. Richards*, 1991 OK 117, ¶ 14, 820 P.2d 812, 816.

and judgment in the case.[106] Further, the award must be based "upon and supported by evidence presented in an adversary proceeding in which the facts and computation upon which the trial court rests its determination are set forth in the record with a high degree of specificity."[107]

¶ 64 It is clear from the transcript that the trial court did not re-examine the record as required, did not conduct an adversarial proceeding on the amount of the award, and did not base the amount of the award on facts and computation. Rather the court based the decision on memory and on the subsequent adjudication on the merits. In considering the issues of lack of *in personam* jurisdiction and of alter-ego liability, the trial court treated all the Spartanburg defendants as one entity, as did the plaintiff throughout the proceedings in the trial court. On remand, the trial court must vacate the order imposing sanctions on the holding companies and re-examine the sanctions against SFC–S in light of the lack of *in personam* jurisdiction over the holding companies to ensure that the defenses raised were not done in bad faith. If the trial court finds that SFC–S is still subject to sanctions under title 23, section 103, the amount of the award must be restricted to what the plaintiff incurred with respect to SFC–S' assertion of lack of *in personam* jurisdiction over it. To the extent attorney fees were incurred only in pursuing its claims against the holding companies, those are not recoverable.

## X. COSTS

¶ 65 At a hearing held on November 30, 2005, the trial court heard arguments on the taxable costs and made rulings on each item. On January 30, 2006, the trial court awarded the plaintiff $27,454.90 in costs plus post-judgment interest from February 15, 2005, the date of the hearing on sanctions. The defendants submit that post-judgment interest did not begin to accrue until the written order was filed on January 30, 2006. The defendants also contest (1) the $750.00 costs for editing the depositions of Ray Biggs and A. Greg Williams, (2) the $4,800.00 costs for copying potential trial exhibits, and (3) the $1,842.95 costs for copying "documents produced in discovery." We review an award of taxable costs to ensure that they are statutorily allowed.[108]

¶ 66 Title 12, section 727(A)(2) allows post-judgment interest on costs to accrue from "the date the judgment or order is pronounced, if expressly stated in the written judgment or order awarding the costs ... or the date the judgment or order is filed with the court clerk," whichever is earlier. Title 12, section 1116, upon which the defendants rely, provides: "Every direction of a court or judge made or entered in writing, and not included in a judgment, is an order." This definition provides an order, other than a judgment, is (1) a direction made by a court or judge or (2) a direction entered in writing. Having reviewed the transcripts of both the February 15, 2005 and the November 30, 2005 hearings, we find nothing in either that would fall within section 1116's definition of an order regarding costs.

¶ 67 The reference in the February 15, 2005 hearing on which the plaintiff hinges his argument was a question to the defendants of whether they agreed that the plaintiff was "entitled, as a matter of course, to [his] statutory costs." At this hearing, the trial court did not address the amount of costs to which the plaintiff was entitled. In fact, the trial court continued the issue of the amount of taxable costs. In the November 30, 2005 hearing, the trial court ruled on the plaintiff's entitlement to certain costs but did not direct the defendants to pay those costs. Not until the January 30, 2006 written order did the trial court actually direct the payment of costs. The trial court erred in directing post-judgment interest to begin accruing on February 15, 2005, rather than on January 30, 2006.

106. *Id.* ¶ 15, 820 P.2d at 816.

107. *Payne v. DeWitt* 1999 OK 93, ¶ 18, 995 P.2d 1088, 1096 (addressing an attorney fee award as a sanction pursuant to 12 O.S.2001, § 3237).

108. *Ashby v. Harris,* 1996 OK 70, ¶ 7, 918 P.2d 744, 747.

¶ 68 The defendants contest $750.00 of costs for editing the video depositions, arguing that there is no statutory basis for this cost. Taxable costs fall into two categories: (1) costs allowed as a matter of course and (2) litigation expenses arising in an equity suit or ancillary equity proceeding.[109] The plaintiff relies on the court's inherent power as a basis for this award. Because this is not an equitable suit or proceeding, the costs here are only those allowed as a matter of course. Costs allowed as a matter of course must be based on statutory authority.[110] The plaintiff has not supported this award with statutory authority. The trial court erred in allowing the $750.00 of costs for editing the video depositions.

¶ 69 The defendants contest the $4,800.00 for copying 48,000 pages of trial exhibits, arguing that only 753 pages of exhibits were admitted at trial. In his motion, the plaintiff denoted these copies only as trial exhibits, exhibits, etc., and made no showing, either in his motion or at the hearing, that they were used at trial. In awarding these costs, the trial court allowed recovery of costs for "potential documents." The plaintiff failed to support this award with any citation to authority. However, as the defendants note, title 12, section 942(4) allows the "[c]osts of papers necessarily used at trial...." Because the plaintiff failed to show that the 48,000 copies were necessarily used at trial and failed to support the award with any other authority, the trial court abused its discretion by allowing the plaintiff to recovery the entire $4,800.00 in costs. However, we find that it was not an abuse of the trial court's discretion to allow recovery for four copies of the exhibits necessarily used at trial—one for the plaintiff, one for the defendants, one for the witness, and one for the court.

¶ 70 Next we address the $1,842.95 costs for copies of discovery documents. Plaintiff argues that title 12, section 3237(C) allows him to recover these costs. Section 3237(C) provides: "[T]he reasonable expense of making the property available under Section 3234 of this title shall be paid by the requesting party, and at the time of taxing of cost in the case, the court may tax such expenses as costs, or it may apportion such expenses between the parties, or it may provide that they are an expense of the requesting party." Section 3234 deals with the production of documents. By its terms section 3237(C) does not allow the costs of copies to be taxed as costs, only the costs of making the documents available. Therefore, trial court erred in allowing the $1,842.95 costs for copies of discovery documents.

¶ 71 Because the trial court erred in its order awarding costs, the order is reversed in part. The matter is remanded to the trial court for an evidentiary hearing on the costs of copies necessarily used at trial, particularly in light of the lack of *in personam* jurisdiction over the holding companies. The trial court is then to enter an order consistent with this opinion.

## XI. SANCTIONS ON APPEAL

¶ 72 The plaintiff asks this Court to sanction the Spartanburg defendants [111] pursuant to title 12, section 2011. The Spartanburg defendants moved to strike the motion. The motion for sanctions was based on the Spartanburg defendants asserting in their reply brief that the transcripts of two video depositions played to the jury were not a part of the trial court record, were not designated as part of the appellate record, and are not a part of the appellate record. Although copies of the deposition transcripts were not originally included in the appellate record, the transcripts were admitted at trial and were designated.[112] When the Spartanburg

**109.** *Fleet v. Sanguine, Ltd.,* 1993 OK 76, ¶ 20, 854 P.2d 892, 902.

**110.** *See Ashby,* 1996 OK 70, ¶ 7, 918 P.2d at 747.

**111.** Having found that the court lacks *in personam* jurisdiction over the holding companies, we are not treating the motion for appeal-related sanctions to include them.

**112.** The Spartanburg defendants in fact designated the entire trial record and exhibits for inclusion in the record on appeal. When Mr. Williams' deposition transcript was offered into evidence, the trial court stated: "That will be part of the record of—of course, it has the objections in it and also will be the record of what was played to the jury." After Mr. Biggs' deposition

defendants discovered that the transcripts had been omitted, they sought to have them included in the appellate record. The deposition transcripts were then made part of the appellate record and are properly before this Court. We decline to impose appeal-related sanctions on SFC–S. The motion to strike the sanction motion is likewise denied.

## XII. CONCLUSION

¶ 73 In conclusion, all orders and judgments against the holding companies are void for lack of *in personam* jurisdiction. SFC–S has sufficient contacts with Oklahoma for the trial court and this Court to exercise both general and specific jurisdiction over it in this action. The trial court did not err in submitting to the jury and instructing it on the issue of SFC–S' alter-ego liability. On remand, the trial court is instructed to dismiss the holding companies as parties to this action.

¶ 74 The sections of title 23, section 9.1 which deal with Category II punitive damages are facially constitutional. The $1,750,000.00 punitive damages award and the jury instruction on punitive damages did not comply with title 23, section 9.1 under the evidence. This issue is remanded to the trial court for further proceedings. The Oklahoma defendants' amended petition in error appealing the award of sanctions against it is dismissed as untimely. Because the trial court did not follow the proper procedures in sanctioning SFC–S under title 23, section 103, the order is reversed and the matter remanded to the trial court.

¶ 75 The trial court erred in ordering post-judgment interest on taxable costs to accrue from February 15, 2005, awarding the costs of editing video depositions, allowing $4,800.00 in copying costs for trial exhibits without a showing that they were necessarily used at trial, and allowing the costs of copying documents furnished pursuant to a request for production. The order awarding costs is reversed in part, and the matter is remanded to the trial court.

¶ 76 The motion for appeal-related sanctions is denied. The motion to strike the motion for sanctions is denied.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART; ORDER AWARDING COSTS REVERSED; ORDER AWARDING SANCTIONS AGAINST NON–RESIDENT DEFENDANTS REVERSED; RESIDENT DEFENDANTS' AMENDED PETITION IN ERROR REGARDING SANCTIONS DISMISSED; APPEAL–RELATED MOTIONS FOR SANCTIONS AND TO STRIKE DENIED; CAUSE REMANDED WITH INSTRUCTIONS.

WINCHESTER, V.C.J., OPALA, EDMONDSON, TAYLOR and COLBERT, JJ., concur.

LAVENDER, HARGRAVE and KAUGER, JJ., concur in result.

WATT, C.J., concurs in part; dissents in part.

WATT, C.J., concurring in part and dissenting in part.

¶ 1 I agree with the majority's position on all issues other than its decision to remand for a new trial on the amount of the punitive damages. Rather than doing so, I would affirm the award subject to a remittitur to $500,000.00.[1]

---

transcript was offered into evidence, the judge responded: "Okay. Give it to [the court reporter]."

1. See, *Buzzard v. Farmers Ins. Co., Inc.*, 1991 OK 127, 824 P.2d 1105.